**Anthony J. POCCHIA, Plaintiff–Appellant,**

**v.**

**NYNEX CORPORATION and Nynex Service Company, Defendants–Appellees.**

No. 674, Docket 95–7598.

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1995.

Decided April 9, 1996.

Anthony J. Pocchia, Staten Island, NY, pro se.

Lon S. Bannett, New York City, for Defendants–Appellees.

Before OAKES, WINTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Several months after Plaintiff–Appellant Anthony J. Pocchia retired from a career with the NYNEX Corporation, the company announced changes in its retirement plan that would have benefitted Pocchia. Pocchia sued the company claiming that it breached a fiduciary duty owed to him under the Employee Retirement Income Security Act ("ERISA") by not informing him, at the time he was negotiating the terms of his resignation, that it had already decided to implement an early retirement plan. He also argued that even if the company was only considering a new plan when he retired, he should have been informed of that fact before he left the company.

The United States District Court for the Eastern District of New York (David G. Trager, District Judge) granted summary judgment in favor of Defendants–Appellees NYNEX Corporation and its subsidiary, NYNEX Service Company (together "NYNEX"). On appeal, Pocchia contends that the district court erred in finding no material issue of fact as to whether NYNEX made its decision to implement an early retirement plan before he left the company, and he makes the same legal arguments as he did in the district court.

The judgment of the district court is affirmed.

### BACKGROUND

On May 15, 1989, Pocchia voluntarily resigned from his position at NYNEX Service Company. Pocchia had worked for NYNEX Corporation or one of its subsidiary or predecessor corporations since May 1965. When he resigned, he signed an agreement, the terms of which entitled him to a lump sum payment of $28,500 and prevented him from raising certain claims against his former employer. More than seven months later, on December 21, 1989, NYNEX announced its new early retirement incentive plan. If Pocchia had retired under this new plan, he would have been entitled to enhanced benefits. By letter dated January 22, 1990, Pocchia requested that he be reinstated and/or included in the new plan. NYNEX denied

this request. On April 20, 1990, Pocchia filed this suit against NYNEX. On May 30, 1995, the district court granted summary judgment in favor of NYNEX. Pocchia's appeal to this court followed.

### DISCUSSION

It is well-settled that in ruling on a motion for summary judgment, a

> judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663, 667–68 (2d Cir.1996). When reviewing the grant of a summary judgment motion, we must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### I. NYNEX's Fiduciary Duties

The parties are in agreement that the NYNEX pension plan is covered under ERISA, that NYNEX is a plan fiduciary, and that Pocchia is a plan beneficiary. Pocchia claims that NYNEX breached its fiduciary duty owed to him under ERISA by not informing him at the time he retired that it had decided to implement or, alternatively, was considering implementing, an early retirement plan. Pocchia claims that the district court misapplied the law to the facts in finding that such a duty did not exist.

The duties owed by a fiduciary under ERISA are codified at 29 U.S.C. § 1104 which, in relevant part, provides:

(a) Prudent man standard of care[:] (1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants ' and beneficiaries and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Because the statute does not enumerate or elaborate in any detail on the duties owed by a fiduciary to a plan beneficiary, the courts have been called upon to define the scope of a fiduciary's responsibilities. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1299 (3d Cir.1993) ("Although the [ERISA] statute articulates a number of fiduciary duties, it is not exhaustive."); *see also Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries [in ERISA], Congress invoked the common law of trusts to define the general scope of their authority and responsibility.").

■ It is well-settled that plan fiduciaries may not affirmatively mislead plan participants about changes, effective or under consideration, to employee pension benefit plans. *See Mullins v. Pfizer, Inc.,* 23 F.3d 663, 669 (2d Cir.1994); *Fischer v. Philadelphia Elec. Co.,* 994 F.2d 130, 135 (3d Cir.1993); *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Barnes v. Lacy,* 927 F.2d 539 (11th Cir.), *cert. denied,* 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991); *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1163 (6th Cir.1988). The law is not well-developed, however, with respect to whether fiduciaries must disclose plan changes that have been proposed and/or considered but not yet adopted in the absence of a request for such information by a plan beneficiary. Courts that have held that fiduciaries must disclose proposed changes absent a request have done so in the limited context of cases where confusion had been created on the part of the beneficiary by prior actions of the fiduciary. *See, e.g.,*

*Fischer v. Philadelphia Elec. Co.,* Nos. Civ. A. 90–8020, Civ. A. 91–2771, 1995 WL 510300, *2 (E.D.Pa.1995); *Bixler,* 12 F.3d at 1300. Such cases provide limited guidance for dealing with the more frequent situation in which no such confusion was created by the fiduciary but where the beneficiary simply believes that he should have been provided with more information to enable him to make a more informed decision with respect to the financial consequences of his retirement.

■ Although the circumstances present in the *Mullins* case did not require us to decide whether a fiduciary must volunteer proposed plan changes, we stated in dicta that "we do not require an ERISA fiduciary to be perfectly prescient as to all future changes in employee benefits. Nor do we require a fiduciary to disclose its internal deliberations." *Mullins,* 23 F.3d at 669 (internal quotations and citations omitted). The question whether fiduciaries have a duty to volunteer information regarding proposed plan changes that have not been adopted is now squarely before us. We answer the question in the negative and hold that a fiduciary is not required to voluntarily disclose changes in a benefit plan before they are adopted. In so doing, we join the Fourth Circuit which has held that "[i]t is not a violation of ERISA to fail to furnish information regarding amendments before these amendments are put into effect." *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir. 1986). We recognize that a plan may be formally adopted by a fiduciary prior to the time that it becomes effective and believe that when this occurs, it is the adoption date, rather than the effective date, that gives rise to a duty to disclose.

Until a plan is adopted, there is no plan, simply the possibility of one. Insisting on voluntary disclosure during the formulation of a plan and prior to its adoption would, we think, increase the likelihood of confusion on the part of beneficiaries and, at the same time, unduly burden management, which would be faced with continuing uncertainty as to what to disclose and when to disclose it. Moreover, any requirement of pre-adoption disclosure could impair the achievement of legitimate business goals. One commentator has posited the situation where a business

seeking to reduce its workforce contemplates a future improvement of an initial early retirement or severance plan if necessary reductions do not occur through retirements or resignations. If fiduciaries were required to disclose such a business strategy, it would necessarily fail. Employees simply would not leave if they were informed that improved benefits were planned if workforce reductions were insufficient. *See,* Edward E. Bintz, *Fiduciary Responsibility Under ERISA: Is There Ever a Fiduciary Duty to Disclose?,* 54 U. Pitt. L.Rev. 979, 997 (1993).

Congress's main purpose in imposing a disclosure requirement on ERISA fiduciaries was to ensure that "employees [would have] sufficient information and data to enable them to know whether the plan was financially sound and being administered as intended." H.R.Rep. No. 533, 93d Cong., 2d Sess. VI (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639. *See also Porto v. Armco, Inc.,* 825 F.2d 1274, 1276 (8th Cir.1987) ("The fiduciary duty imposed by ERISA is generally applied to the management of plan assets. Common law trust principles provide the foundation for the statutory standard, which prohibits the use of plan assets for the primary benefit of a party other than the plan itself."), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 274 (1988); *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984) ("Congress in its findings and declaration of policy sought to assure the equitable character and financial soundness of trustee benefit plans."); *Fine v. Semet,* 699 F.2d 1091, 1094 (11th Cir.1983) (proper financial management of plans was Congress's goal in holding ERISA fiduciaries to the "prudent man" standard). Permitting plan fiduciaries to keep secret their pre-adoption deliberations and discussions in no way frustrates this purpose. Rather, such a bright-line rule protects the interests of beneficiaries, who will receive information at the earliest point at which their rights can possibly be affected, as well as the interests of fiduciaries, who will be required to provide information only at the point at which it becomes complete and accurate.

II. The Date of the Benefit Change

██ Pocchia concedes that at the time he was negotiating his retirement, he never inquired into the possibility that NYNEX would be implementing any new benefits programs. He claims that, in failing to so inquire, he "was operating under the belief, often discussed in the company by employees not privy to high level information or whose work location was corporate headquarters, that no early retirement incentive would be offered by NYNEX." Pocchia's reasons for failing to inquire, however, are legally insignificant and do not give rise to any material issues of fact which would require examination by a trier of fact. While NYNEX had a fiduciary duty not to make affirmative misrepresentations or omissions, it did not have a duty to disclose proposed changes in the absence of inquiry by Pocchia. NYNEX only came under a duty to voluntarily disclose once it adopted the plan changes.

NYNEX presented evidence—principally an affidavit submitted by Robert F. Leonard, Director of Benefits Planning for NYNEX, and interrogatory answers provided by William Ferguson, Chief Executive Officer and Chairman of the Board of Directors of NYNEX—that suggests that NYNEX did not decide to adopt the new pension plan until November or December 1989. Pocchia argues that the evidence he presented to the district court was sufficient to raise a material issue of fact as to when NYNEX decided to adopt the new incentive program. He claims that at the time he was considering retirement, NYNEX had already approved the early retirement plan and that all that was needed to implement the plan was the "rubber stamp" of NYNEX's Board of Directors.

Pocchia claims that the affidavits of John C. Stetson and Patrick Lee, two NYNEX Service Company ("NSC") attorneys, support Pocchia's contention that NYNEX knew about the new plan prior to his resignation. Pocchia also claims that it was "common knowledge" in late 1988 that the plan would be implemented and that NYNEX must have approved the plan well before it was formally adopted because, as a general practice, NYNEX was slow to implement change. Pocchia's claims are without merit.

Lee never submitted an affidavit; although he was deposed, the transcript of the deposi-

tion was never filed with the district court and therefore cannot be used to support a finding that material issues of fact exist. While Stetson indicated in his affidavit that Raymond Burke (Executive Vice President and General Counsel of NYNEX) and Lee had indicated that they were aware of the early retirement incentive program in 1988 and that it was common knowledge among NSC employees that such a program was being considered, Stetson subsequently recanted these claims in his deposition. In any event, under the rule we set forth today, "consideration" of a plan change, standing alone—which is all that the Stetson affidavit reveals—does not give rise to a duty to disclose voluntarily. Finally, Pocchia's added assertion that the plan must have been considered prior to his resignation because NYNEX was notoriously slow in implementing changes is simply too speculative to defeat a motion for summary judgment. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995) ("[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'") (quoting *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)); *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam) ("[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion.").

Thus, viewing the evidence in the light most favorable to Pocchia, which we must, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), we cannot conclude that Judge Trager erred in finding that Pocchia failed to sustain his burden of presenting evidence from which a jury could reasonably find that NYNEX had adopted an early retirement program by the time Pocchia resigned.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.