Drolet v. Healthsource                    CV-96-166-B    03/26/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Robin Drolet**

  **v.**                                                C-96-166-B

**Healthsource, Inc., et al.**


**MEMORANDUM AND ORDER**


  Robin Drolet is a beneficiary of a health care plan administered by the Mitre Corporation for the benefit of its employees and their families.  Her class action complaint alleges that Healthsource New Hampshire, Inc. and its parent corporation, Healthsource, Inc., are liable under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 et seq. (West 1985, Supp. 1996) ("ERISA"), for several materially false and misleading statements that Healthsource New Hampshire, Inc. allegedly made to the plan's beneficiaries.  The defendants have moved to dismiss the complaint claiming that Drolet lacks standing to pursue her claim and that her complaint fails to state a claim for relief because neither defendant qualifies as a fiduciary under ERISA.  For the reasons that follow, I deny defendants' motion.

## I.  BACKGROUND

Mitre Corporation ("Mitre") contracted to provide health care coverage for its employees with Healthsource New Hampshire, Inc. ("Healthsource New Hampshire"), a health maintenance organization ("HMO") owned and operated by defendant Healthsource, Inc. ("Healthsource").  The benefits provided by the Mitre plan are described in a "Group Subscriber Agreement" issued by Healthsource New Hampshire.  The agreement requires a member to choose a "primary care physician" who will be responsible for providing the member with routine medical care and coordinating the member's specialty care referrals.  In defining the term "primary care physician," the agreement emphasizes that "[t]he physician has a contractual relationship with Healthsource which <u>does not interfere with the exercise of the physician's independent medical judgment</u> . . . ."  (emphasis added).  The agreement further provides:

> **Financial Arrangements with Participating Providers.**
> HEALTHSOURCE contracts with Participating Providers under many different financial arrangements, which include, but are not limited to fee-for-service payments, fixed monthly payments for each Member, and fixed fees for each Referral or case.  Participating Providers may also be entitled to additional payments for effectively managing care and/or Member satisfaction.

2

Other documents issued by Healthsource New Hampshire similarly emphasize the role of the primary care physician in coordinating a member's referrals for specialty care based upon the physician's determination of medical necessity.

Drolet alleges that the Group Subscriber Agreement and other documents issued by Healthsource New Hampshire egregiously misrepresent the nature of the relationship between the company and its contracting physicians. In reality, Drolet contends, the doctor-patient relationship is hopelessly compromised by various undisclosed financial incentives that Healthsource New Hampshire provides to its physicians in an effort to reduce expenditures on specialty care services. Foremost among these incentives, Drolet alleges, are "Referral Funds" which permit a physician to earn up to 33% in additional income by minimizing the use of specialty services such as diagnostic tests, referrals, and hospitalizations.

Drolet relies on Healthsource New Hampshire's alleged misrepresentations in arguing that the company breached the fiduciary duty it allegedly owes to the Mitre plan's participants and beneficiaries under ERISA. Drolet also argues that Healthsource is liable for Healthsource New Hampshire's acts because it "controls the policies and practices" of Healthsource

3

New Hampshire and has the power to "grant or deny, or to order its subsidiaries to grant or deny, health care benefits offered to plan participants and beneficiaries."

To remedy the alleged violations, Drolet asks for declaratory, injunctive, and monetary relief, including: (1) a declaration that Healthsource and Healthsource New Hampshire breached their fiduciary duties under ERISA; (2) a declaration that Healthsource and Healthsource New Hampshire have violated the express and implied terms of the plan; (3) an injunction preventing further dissemination by Healthsource New Hampshire of materials containing misrepresentations or omissions; (4) an injunction preventing Healthsource New Hampshire from implementing or enforcing the provisions of its contracts with participating physicians; (5) a return of the fair value of premiums paid to Healthsource New Hampshire; and (6) attorneys' fees and costs.

## II.   STANDARD OF REVIEW

Defendants argue that dismissal is warranted pursuant to both Fed. R. Civ. P. 12(b)(1), because Drolet lacks standing to sue, and Fed. R. Civ. P. 12(b)(6), because her complaint fails to state a claim for relief.  Both claims are judged by essentially

4

the same standard of review. United States v. AVX Corp., 962 F.2d 108, 114-15 (1st Cir. 1992). In reviewing either claim, the court must accept all well-pleaded facts as true and construe all reasonable allegations in the light most favorable to the plaintiff. Adams v. Watson, 10 F.3d 915, 919 (1st Cir. 1993) (lack of standing); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989) (failure to state a claim). Accordingly, a motion to dismiss for lack of standing should be granted only if the plaintiff has failed to sufficiently plead facts that are vital to the plaintiff's standing to litigate in federal court. AVX, 962 F.2d at 114. Similarly, a motion to dismiss for failure to state a claim should be granted only if the complaint fails to state a claim for relief under any plausible theory. Dartmouth Review, 889 F.2d at 16. A reviewing court may look beyond the complaint to documents such as contracts referenced in the complaint without converting a motion to dismiss into a motion for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

## III. ANALYSIS

### A. Standing

Both constitutional and prudential considerations

potentially constrain a plaintiff's standing to sue in federal court. Bennett v. Spear, No. 95-813, 1997 WL 119566, at *6 (S. Ct. Mar. 19, 1997). The "irreducible constitutional minimum of standing" consists of three requirements: (i) an "injury in fact," (ii) a causal connection to the alleged injury that is "fairly . . . traceable" to the defendant, and (iii) a likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations omitted). The defendants in this case limit their standing argument to a claim that Drolet has failed to sufficiently allege that she suffered injury-in-fact.

To satisfy the constitution's injury-in-fact requirement at the pleadings stage, a plaintiff must (i) allege the deprivation of a "legally protected interest," (ii) that is "concrete" and "particularized" in the sense that the alleged injury must affect the plaintiff in a "personal and individual way," and (iii) that is either "actual" or "imminent." Id. at 560 & n.1. Although Congress cannot enlarge the judicial power vested in the courts by Article III of the Constitution, the "injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" Warth v. Seldin, 422 U.S. 490, 500 (1975) (quoting Linda R.S. v. Richard

6

D., 410 U.S. 614, 617 n.3 (1973); see also Havens Realty Corp. v. Coleman, 455 U. S. 363, 373-74 (1982) (Congress created a legally enforceable right to "truthful information about . . . housing" which plaintiffs could sue to enforce even though they expected defendants' statements to be false and did not rely on them). Drolet's complaint readily satisfies the injury-in-fact requirement when it is judged by this standard.

Among the duties that ERISA imposes on fiduciaries is a duty to refrain from making materially false or misleading statements to plan participants and beneficiaries. Varity Corp. v. Howe, 116 S. Ct. 1065, 1073 (1996); see also Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12 (1st Cir. 1994) (fiduciary must disclose material facts of which plan participants are unaware but need to know in order to protect their interests in dealing with third parties). ERISA also expressly authorizes beneficiaries to sue to enjoin breaches of fiduciary duty.[1] 29 U.S.C.A. § 1132(a)(3) (West 1985); Varity, 116 S. Ct. at 1075. Thus, Drolet's breach of fiduciary duty claims plainly involve

---

[1] To the extent that defendants argue that Drolet lacks standing because she is a beneficiary rather than a plan participant, I reject their argument because ERISA expressly authorizes beneficiaries to sue to redress breaches of fiduciary duty. 29 U.S.C.A. § 1132(a)(3) (West 1985).

7

the deprivation of her legally protected interest in receiving accurate information from the plan's fiduciaries.

In addition, Drolet's alleged injury is both "particularized" and "actual." Unlike other cases where courts have rejected a plaintiff's standing to sue because the plaintiff could allege nothing more than an interest in the subject of the lawsuit, see, e.g., Lujan, 504 U.S. at 563 (no injury in fact because plaintiff could allege nothing more than a special interest in the subject of the action), the plaintiff in this case is a member of the limited class of persons who have been vested by Congress with the right to expect that fiduciaries of employee benefit plans will refrain from making false statements and material misrepresentations to the plan's beneficiaries. As such, Drolet can legitimately claim that she has been injured in a personal and individual way by the defendants' alleged misconduct even though she does not contend that she relied to her detriment on the defendants' alleged misrepresentations. See Havens Realty Corp. 455 U.S. at 373; see also Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir. 1993) ("[W]e conclude that ERISA does not require that harm be shown before a plan participant is entitled to an injunction ordering the plan

8

administrator to comply with ERISA's reporting and disclosure requirements.").

I also find no merit in defendants' argument that the First Circuit's opinion in Govoni v. Bricklayers, Masons and Plasterers Int'l Union, Local No. 5, 732 F.2d 250, 252 (1st Cir. 1984), prevents Drolet from suing for a breach of fiduciary duty unless she can claim that she actually relied on defendants' alleged misrepresentations. Govoni sued his pension fund claiming that he was entitled to a larger pension because (1) the trustees misinterpreted an amendment to the plan that authorized the larger pension; and (2) even if the trustees' interpretation was correct, it could not be enforced because the trustees failed to properly disclose their restrictive interpretation to the plan's beneficiaries. Rather than dismissing Govoni's claims for lack of standing, the First Circuit disposed of Govoni's first claim on the merits and explained that he was not entitled to recover on his second claim because he did rely on the trustees' faulty plan description. Id. at 252. Although Govoni may well limit Drolet's right to retrospective relief if she cannot demonstrate that she relied on defendants' alleged misrepresentations, the decision has no bearing on her standing to sue for prospective injunctive relief. See Gillis, 4 F.3d at 1148.

9

In summary, Drolet has alleged that she has suffered the deprivation of a legally protected right, that she is a part of the limited class of persons who are individually affected by the defendants' alleged misconduct, and that the injury of which she complains is actual and ongoing. Accordingly, she has sufficiently alleged a cognizable injury-in-fact to survive defendants' motion to dismiss for lack of standing.

## B. **Defendants' Liability for Fiduciary Violations**

Defendants contend that they are not administrators of the plan and do not have discretionary obligations under the plan. Therefore, they argue, they are not fiduciaries responsible for misrepresentations or omissions in the plan documents. Drolet counters that Healthsource New Hampshire is a fiduciary under ERISA and is directly responsible for misrepresentations contained in the Group Subscriber Agreement and the other plan documents it prepared. Drolet also contends that Healthsource controls the policies and practices of Healthsource New Hampshire, its wholly-owned subsidiary, and thus has the power to grant or deny, or order Healthsource New Hampshire to grant or deny, health care benefits offered to plan participants and beneficiaries. Thus, Healthsource, she argues, is itself a fiduciary under ERISA.

10

ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . , [or (ii)] he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21)(A) (West Supp. 1996). The term "control" in this definition has been interpreted as "the power to exercise a controlling influence over the management or policies of a person other than an individual." 29 C.F.R. § 2510.3-21(e)(2) (1996). Drolet satisfactorily alleges in her complaint that Healthsource New Hampshire has the discretionary authority and control over the plan to qualify it as a fiduciary. Moreover, Healthsource New Hampshire conceded at the hearing on the motion to dismiss that it exercises final control over benefits appeals. (Hearing transcript, p. 74). As such, it plainly qualifies as a fiduciary under ERISA.[2] See Varity Corp., 116 S. Ct. at 1077 (noting that "a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan

_____

[2] Cases cited by defendants, Reich v. Rowe, 20 F.3d 25 (1st Cir. 1994) and Santana v. Deluxe Corp., 920 F. Supp. 249 (D. Mass. 1996), are not to the contrary as both cases involved situations where defendants did not exercise authority or control over the plan.

11

documents"); <u>Libby-Owens-Ford Co. v. Blue Cross and Blue Shield Mut.</u>, 982 F.2d 1031, 1035 (6th Cir. 1993) ("When an insurance company administers claims for [a plan] and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' . . . "); <u>American Fed'n of Unions v. Equitable Life Assurance Soc'y</u>, 841 F.2d 658, 663 (5th Cir. 1988). Drolet also adequately alleges that Healthsource controls the policies and practices of Healthsource New Hampshire to such an extent that it is also exercises control over the management and policies of the plan.[3] <u>See</u> <u>Johnson v. Flowers Indus.</u>, 814 F.2d 978, 981 (4th Cir. 1987) (holding that corporate separateness will be disregarded when the parent dominates the subsidiary "to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation") (quoting <u>Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.</u>, 483 F.2d 1098, 1106 (5th Cir. 1973)).

---

[3] Healthsource asks that I treat its motion to dismiss as a motion for summary judgment to the extent that additional factual submissions are necessary to demonstrate that Healthsource is not a fiduciary under ERISA. I decline to do so at this point, and instead afford Drolet an opportunity to engage in discovery to address the question of how much, if any, control Healthsource exerts over the management or policies of the plan.

A fiduciary owes a duty of loyalty to its beneficiaries which includes the obligation to deal fairly and honestly with plan members. Varity Corp., 116 S. Ct. at 1074-75. This duty not to mislead is derived both from the common law of trusts and ERISA's statutory language. See 29 U.S.C.A. § 1104(a)(1) (West 1985 & Supp. 1996) (requiring plan fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . "); Armstrong, 30 F.3d at 12. In addition, an ERISA fiduciary's duty of loyalty requires that it disclose material facts that could adversely affect a plan member's interests. Shea v. Esensten, No. 95-4029 MN, 1997 WL 78350, at *5 (8th Cir. 1996); see also Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750 (D.C. Cir. 1990) ("The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA."). Therefore, if Healthsource New Hampshire made material misrepresentations in the Group Subscriber Agreement and other plan documents, it can be enjoined under ERISA to prevent further breaches of its fiduciary duty.[4]

_____

[4] A fiduciary also owes a duty to beneficiaries not to participate, conceal, or knowingly allow breaches of duty made by a co-fiduciary, such as a plan administrator. 29 U.S.C.A. §

13

Lastly, I reject Healthsource New Hampshire's argument that 29 C.F.R. § 2520.102-3 and -5 (1996) limit its liability with respect to misleading plan disclosures.  Section 2520.102-5 merely exempts HMO's from disclosing certain information that they otherwise would have to disclose under § 2520.102-3.  At best, these regulations limit Healthsource's obligation to disclose.  They do not authorize Healthsource New Hampshire, as a fiduciary, from making misrepresentations to beneficiaries when it voluntarily provides information not required to be disclosed.

_____

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to dismiss (document no. 8) is denied.  Within ten days of this order, the parties shall submit a joint proposal for any discovery, a proposal addressing class certification issues, and a proposal setting a timetable for cross-motions on summary judgment.

SO ORDERED.

_____
Paul Barbadoro
United States District Court

March 26, 1997

_____

1105(a) (West 1985).  Thus, if Healthsource New Hampshire knew that Mitre Corporation was distributing misleading plan descriptions to beneficiaries of the plan and did nothing, it can be held liable as a co-fiduciary.

cc: Stanton E. Tefft, Esq.
D. Brian Hufford, Esq.
Robert J. Moses, Esq.
Stuart M. Gerson, Esq.