Michelle WEISS, on her own behalf and on behalf of all others similarly situated, Plaintiff,

v.

CIGNA HEALTHCARE, INC. and Cigna Healthcare of New York, Inc., Defendants.

No. 96 Civ. 1107(SHS).

United States District Court, S.D. New York.

July 23, 1997.

James V. Bashian, New York City, D. Brian Hufford, Pomerantz Haudek Block & Grossman, New York City, for Plaintiff.

Martin Glenn, O'Melveny & Myers, New York City, Robert N. Eccles, Karen M. Wahle, O'Melveny & Myers, Washington, DC, for Defendants.

## OPINION AND ORDER

STEIN, District Judge.

Michelle Weiss has brought this putative class action seeking declaratory and injunctive relief pursuant to the Employee Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq* Weiss is a participant in an employee welfare benefit plan (the "Plan") offered and subsidized by her employer. (Complaint at ¶ 14.) Defendant CIGNA Healthcare of New York, Inc. ("CHC") is a health maintenance organization ("HMO") retained by Weiss' employer to provide health insurance coverage pursuant to the Plan. Defendant CIGNA Healthcare, Inc., is CHC's corporate parent and is alleged to control the policies and practices of its subsidiary. (Compl. at ¶ 18.) The two defendants are referred to collectively in this Opinion as "CIGNA".

Weiss alleges that CIGNA has breached the express and implied terms of the Plan as well as various fiduciary duties required under ERISA and seeks redress pursuant to the civil enforcement provisions set forth in ERISA § 502(a), 29 U.S.C. § 1132(a). CIGNA has moved for an order dismissing the complaint pursuant to Fed. R.Civ.P. 12(b)(6). In its consideration of defendants' motion to dismiss, this court must assess the legal feasibility of Weiss' complaint, not weigh the evidence which might be offered at trial. *See Odom v. Columbia University*, 906 F.Supp. 188, 193 (S.D.N.Y. 1995). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle $her$ to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). Accordingly, all factual allegations in the complaint are accepted as true, and the complaint is viewed in the light most favorable to plaintiff. *See Jackson Nat'l Life*

*Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699 (2d Cir.1994).

### A. *Weiss' Fiduciary Duty Claim Regarding CIGNA's Alleged "Gag Order" Policy*

Defendants' motion to dismiss is GRANTED in PART and DENIED in PART with regard to Weiss' claim that CIGNA limits the extent to which its participating physicians may discuss medical treatments with Plan members. Weiss alleges that CIGNA engages in "an undisclosed policy" of preventing its physicians from "advising patients of treatment options which [are] not compensable by the HMO," and that it enforces this "gag-order policy" by "reprimand[ing] or even terminat[ing] physicians who disclose that CIGNA will not cover particular forms of treatment that might be useful to the patient." (Compl. at ¶¶ 69–72; Plaintiff's Memorandum in Opposition to Motion ("Pl. Mem.") at 22.) Weiss claims that by implementing this policy, CIGNA has "breached its fiduciary obligations and has breached its implied covenant of good faith and fair dealing." (Compl. at ¶ 78.)

■ Weiss' claim for breach of an implied covenant of good faith and fair dealing is preempted by the terms of ERISA. *See* 29 U.S.C. § 1144(a); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1136–37 (7th Cir.1992); *Nevill v. Shell Oil Co.*, 835 F.2d 209, 211–12 (9th Cir.1987); *California Digital Defined Benefit Pension Fund v. Union Bank*, 705 F.Supp. 489, 490 (C.D.Cal.1989). Accordingly, defendants' motion to dismiss is granted with regard to that claim. Defendants' motion is denied, however, with regard to Weiss' claim that CIGNA has breached its fiduciary duty. If the factual allegations set forth in the Complaint are accepted as true—as they must be at this stage in the proceedings—Weiss has stated a viable claim pursuant to ERISA §§ 404(a) and 502(a)(3), 29 U.S.C. §§ 1104(a) and 1132(a)(3).

■ A person is a fiduciary of a benefit plan for the purposes of ERISA "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). An HMO can be an ERISA fiduciary when it exercises such discretion. *See, e.g., O'Reilly v. Ceuleers*, 912 F.2d 1383, 1385 (11th Cir.1990); *Morales v. Health Plus Inc.*, 954 F.Supp. 464, 468–69 (D.P.R.1997). ERISA requires plan fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Such fiduciary duties "draw much of their content from the common law of trusts," *Varity Corp. v. Howe*, —— U.S. ——, ——, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996), and "must be enforced without compromise" to ensure that discretionary power is exercised "with an eye single to the interests of the participants and beneficiaries." *John Blair Communications v. Telemundo Group*, 26 F.3d 360, 367 (2d Cir.1994) (citing *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982)).

■ CIGNA acts in a fiduciary capacity—and therefore comes under the obligations of loyalty imposed by ERISA—to the extent that it exercises discretionary control over the communication of medical information to Plan participants by their physicians. CIGNA's alleged policy of restricting the disclosure of non-covered treatment options would, if true, directly undermine the ability of plan participants to have unfettered access to all relevant information relating to their physical or mental condition and treatment options.[1] Such a policy would thereby constitute a breach of CIGNA's duty under ERISA to manage the Plan "solely in the interest of the participants." It is true that a physician has an independent duty to provide full information to his or her patients, a duty which "is not altered by limitations in the coverage provided by the patient's managed care plan." (*See* Council on Ethical and Judicial Affairs, American Medical Association, *Ethi-*

---

1. For that reason, federal legislation prohibiting HMO gag clauses—i.e., the "Patient Right to Know Act," H.R. 586 and S. 449, 105th Cong. (1997)—was introduced before the House of Representatives on February 5, 1997 and before the Senate on March 17, 1997. The measure is currently pending.

*cal Issues in Managed Care*, Council Report, 273 JAMA 330 (Jan. 25, 1995)). A patient therefore cannot be deprived of such information absent an ethical breach on the part of the physician. Nonetheless, CIGNA's alleged rule mandating such an ethical breach upon pain of termination would provide many physicians with no meaningful choice and would effectively limit the amount of information available to Plan participants.

Weiss has offered thin evidence indeed, confined to hearsay submissions, to support her assertion that a "gag order" policy actually exists on the part of CIGNA. Nevertheless, she has cleared the initial hurdle of Fed.R.Civ.P. 12 and is entitled to proceed with discovery on her claim. Accordingly, defendants' motion to dismiss is denied with regard to Weiss' fiduciary duty claim arising from CIGNA's alleged "gag order" policy.

**B. *Weiss' Fiduciary Duty Claim Regarding Physician Compensation***

■ Defendants' motion to dismiss is GRANTED with regard to plaintiff's fiduciary duty claims arising from CIGNA's alleged financial arrangements with its participating physicians. (Compl. at ¶ 78.) Weiss contends that CIGNA pays its primary care physicians ("PCPs") pursuant to a system "designed for only one purpose—to influence its PCPs to *reduce* the amount of treatment they provide to their patients or the number of referrals they make to specialists." (Pl. Mem at 7.) Specifically, the Complaint alleges that CIGNA doctors are compensated through "capitation" payments and "withholds," whereby CIGNA pays a small monthly fee per patient regardless of the amount of care actually provided and then withholds a portion of those payments "to be returned only if the doctor has sufficiently low rates of referrals to specialists." (*Id.*) It is further alleged that CIGNA pays financial bonuses to PCPs "who keep the referral and hospitalization rates of their patients below the average level of their peers." (Compl. at ¶ 57.)

Weiss asserts that these methods of payment constitute "a scheme by which [CIGNA] seeks to pressure its participating physicians to undertreat their patients in order to maximize profits" which creates a "direct conflict of interest in the exercise by the PCPs of their medical judgment," and "caus[es] the breach of fiduciary duty owed by the participating physicians to the plaintiff and the Class Members." (Compl. at ¶¶ 38, 51, 78.) Accordingly, she claims that CIGNA has violated its fiduciary duties toward Plan participants, *see* ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and has also breached its implied covenant of good faith and fair dealing. (Compl. at ¶ 78.)

As a threshold matter, as with the alleged "gag order" policy discussed above, Weiss' claim for breach of the implied covenant of good faith and fair dealing is preempted by ERISA and is dismissed. 29 U.S.C. § 1144(a). Unlike in the case of the alleged "gag order" policy, however, Weiss' fiduciary duty claim is also dismissed here, on the ground that Weiss has identified no breach of any fiduciary obligation owed by CIGNA to Plan participants under ERISA. Whereas the alleged "gag order" is driven by a threat of termination and involves the potential deprivation of relevant medical information, Weiss makes no claim here that CIGNA actually coerces physicians to breach their fiduciary duties or endangers any specific rights or benefits to which participants are entitled under the terms of the Plan. CIGNA's compensation system requires physicians to weigh their economic interests against their ethical obligations to their patients; as such, it presents dangers of abuse. However, to the extent that a doctor takes advantage of financial incentives and withholds necessary care from his or her patients, that doctor's ethical breach is not attributable to CIGNA. The profit motive created by the HMO does not make such violations "inevitabl[e]," (Compl. at ¶ 66), and indeed plaintiff has pointed to no fiduciary breach by any physician in the case of any putative class member, nor is it alleged beyond the most speculative terms that such a breach would ever occur in the future. *See Maltz v. Aetna Health Plans of New York*, 114 F.3d 9, 12 (2d Cir.1997).[2]

---

**2.** This result is unchanged even if Weiss' claim is taken to arise under ERISA's prohibition against aiding or abetting a co-fiduciary's violation, 29 U.S.C. § 1105, since no allegation has been

Weiss' contention that CIGNA's compensation package facially violates ERISA simply because it deprives her of her right to receive "medical opinions and referrals unsullied by mixed motives," (Compl. at ¶ 66), is tantamount to a claim that risk-sharing arrangements in managed care are inherently illegal, a position that is refuted by federal and New York law. *See* 42 U.S.C. § 300e(c)(2); 42 C.F.R. § 417.103(b); N.Y. Pub. Health Law § 4403(1)(c). Moreover, plaintiff's concern about the soundness of managed care policy is best suited for resolution by branches of government other than the judiciary, *see, e.g., Ambroze v. Aetna Health Plans of New York, Inc.*, No. 95 Civ. 6631(DLC), 1996 WL 282069 at *10 (S.D.N.Y. May 28, 1996), vacated on other grounds, 107 F.3d 2 (2d Cir.1997), and indeed legislative and executive action has already been undertaken in that regard.[3] Weiss' allegation of breach of duty with regard to CIGNA's financial arrangements with its physicians does not state an ERISA claim and is dismissed.

## C. *Weiss' Fiduciary Duty Claim Regarding the Disclosure of Physician Compensation*

█ CIGNA's motion to dismiss is also GRANTED with regard to Weiss' claim that CIGNA has violated ERISA by failing to *disclose* in the Group Service Agreement ("GSA") the nature of its physician compensation contracts. (Compl. at ¶¶ 42–52, 77.) Weiss contends that such information affects the ability of current Plan participants to "make an intelligent assessment of whether their physicians' medical recommendations should be questioned," (Pl. Mem. at 13), and

that CIGNA's nondisclosure therefore constitutes a violation of ERISA. (Compl. at ¶ 77.)[4] The claim rests on two statutory grounds: first, Weiss asserts that CIGNA has failed to comply with the mandatory "summary plan description" ("SPD") disclosure requirements set forth in ERISA § 102, 29 U.S.C. § 1022; in the alternative, she contends that CIGNA has violated a disclosure obligation arising from the general ERISA fiduciary duties of loyalty and prudence set forth in ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Neither of these grounds supports Weiss' claim.

█ The SPD argument is twice deficient. To begin with, the SPD disclosure obligation "is placed on the person designated by ERISA as the 'administrator' of the plan, not on every fiduciary ." *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir.1993). In this case, the administrator of the Plan appears not to be CIGNA but rather Weiss' employer. *See* ERISA § 3(16), 29 U.S.C. § 1002(16); *Burkhart*, 991 F.2d at 1010. Even if the SPD disclosure requirements did apply to CIGNA, however, the scope of those provisions would not reach the type of information sought by Weiss here. An SPD must be "sufficiently accurate and comprehensive to reasonably apprise [Plan] participants and beneficiaries of their rights and obligations under the plan," 29 U.S.C. § 1022(a), and must disclose "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b); *see Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 143 (2d Cir.1997). The information that need

---

made of any primary fiduciary breach that could have been known or facilitated by CIGNA.

**3.** *See* Omnibus Budget Reconciliation Act of 1990 §§ 4204(a) and 4731. Pursuant to that Act, the Federal Health Care Financing Administration recently issued regulations limiting the types of bonuses and incentives that can be paid by HMOs to doctors for controlling the costs of services provided to Medicare and Medicaid patients. *See* 42 C.F.R. § 417.479 (Jan. 1, 1997).

**4.** In her complaint, Weiss originally claimed that CIGNA had breached its fiduciary duty to *prospective* CIGNA participants by failing to disclose (a) its final decision-making authority over medi-

cal treatments, and (b) its economic arrangements with its physicians. (Compl. at ¶¶ 50–51, 77.) Such omissions were allegedly made "for the purpose of inducing class members to join CIGNA and to pay the required premiums." (*Id.* at ¶ 77.) The Plan, however, does reveal CIGNA's decision-making role, (*see* Group Service Agreement at 6, 25), and in any event ERISA fiduciary duties do not govern the distribution of marketing materials to potential plan participants. *See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1258–60 (2d Cir.1987); *Consolidated Beef Indus. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir.1991); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 583 (10th Cir.1991).

be disclosed is not unlimited. *Id.*, 107 F.3d at 144. Weiss has failed to allege facts or case authority establishing that the information she seeks concerning her physician's compensation package is necessary to "reasonably apprise" her of any current or future "rights or obligations under the Plan," nor has she identified any specific circumstances that could result in her disqualification from the Plan, or her ineligibility for, or denial or loss of, any benefits, rights or remedies provided by the Plan. Accordingly, the information she seeks does not fall within ERISA's express disclosure requirements.

▬▬▬ As noted above, Weiss also purports to find an obligation for CIGNA to disclose the nature of its physician compensation arrangements in ERISA's general fiduciary obligations of loyalty and prudence, ERISA § 404, 29 U.S.C. § 1104. Plaintiff's argument is unavailing. As a starting point, the general language of a statute "will not be held to apply to a matter specifically dealt with in another part of the same enactment," *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944), particularly in the case of "a reticulated statute such as ERISA." *Bigger v. American Commercial Lines*, 862 F.2d 1341, 1344 (8th Cir.1988). Had Congress seen fit to require the affirmative disclosure of physician compensation arrangements, it could certainly have done so in ERISA §§ 101–111. The general fiduciary obligations set forth in ERISA § 404 do not refer to the disclosure of information to Plan participants, and it would be "inappropriate to infer an unlimited disclosure obligation on the basis of general provisions that say nothing" about such duties. *Board of Trustees of the CWA/ITU*, 107 F.3d at 147 (citing *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir.1996)); *see also Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 79–86, 115 S.Ct. 1223, 1229–31, 131 L.Ed.2d 94 (1995).

▬▬ To the extent that the duties of an ERISA fiduciary do go beyond the bounds of express statutory requirements, *see Varity*, —— U.S. at —— – ——, 116 S.Ct. at 1073–74, the expansion sought by plaintiff in this case is not supported by the facts alleged or by legal precedent. A fiduciary's duty under ERISA includes the obligation to neither deceive nor mislead plan participants or beneficiaries about material facts; i.e., not to lie to them. *See Varity*, —— U.S. at ——, 116 S.Ct. at 1074; *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278–79 (2d Cir.1996). That duty has not been extended in this Circuit to require ERISA fiduciaries "to disclose truthful information on their own initiative." *Id.*; *see Pocchia*, 81 F.3d at 278.[5]

Plaintiff relies on the decisions in two other Circuits in *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747 (D.C.Cir.1990), and *Bixler v. Cent. Pa. Teamsters Health–Welfare Fund*, 12 F.3d 1292 (3rd Cir.1993), for support. In both *Eddy* and *Bixler*, however, the fiduciary did not merely fail to disclose information, but in fact provided incorrect or misleading information in response to a specific inquiry, and the resulting confusion resulted in an actual injury or denial of benefits. *See Eddy*, 919 F.2d at 749–50; *Bixler*, 12 F.3d at 1300. Accordingly, any disclosure duty defined in those decisions arose in the "limited context ... where confusion has been created on the part of the beneficiary by prior actions of the fiduciary." *Pocchia*, 81 F.3d at 278. No such duty exists where, as here, no "predicament" has been presented to CIGNA by any plaintiff or putative class member, no inaccurate information has been communicated by CIGNA in response to a specific inquiry, and no actual or threatened injury or denial of benefits has been identified by the plaintiff as a result of CIGNA's nondisclosure.

Moreover, even under dicta contained in *Eddy* and *Bixler* CIGNA would have no duty

5. *Maltz v. Aetna*, relied upon by plaintiff, is not to the contrary. In *Maltz* the Second Circuit found that an insurer did not violate ERISA when it changed over to a capitation payment agreement with its physicians in place of a fee-for-service method of compensating them. In so holding, the court relied in part on the fact that the plaintiff had "renewed her contract ... with full knowledge of these significant changes." 114 F.3d at 12. *Maltz* did not address the issue that is currently before this Court, namely, whether the fiduciary provisions of ERISA impose an *affirmative duty* on the insurer to inform its subscribers of the nature of its physician compensation arrangements.

to disclose the nature of its compensation agreements with its physicians, because Weiss has not shown that such information affects "circumstances that threaten interests relevant to the relationship" or that it contains "material facts . . . which [she] needs to know for [her] protection in dealing with a third person." *Eddy,* 919 F.2d at 750. Nor has it been shown that CIGNA's silence regarding its physician compensation agreements "might be harmful" to Plan participants. *Bixler,* 12 F.3d at 1300. Indeed, as discussed earlier, Weiss' contention that physicians will compromise their ethical responsibilities in response to financial incentives— while possibly a valid legislative concern—is too speculative to support a legal claim pursuant to ERISA.[6]

For the foregoing reasons, ERISA imposes no affirmative obligation upon CIGNA to inform Plan participants about its financial arrangements with participating physicians, and plaintiff's fiduciary duty claim arising from CIGNA's alleged failure to disclose such arrangements is accordingly dismissed.

### D. *Weiss' Claim Regarding CIGNA's Alleged Breach of the Terms of the Plan*

■■■ Defendants' motion to dismiss is GRANTED with regard to plaintiff's claim that defendants have breached the express or implied terms of the Plan.[7] That claim rests on two allegations: first, that CIGNA makes medical determinations based on actuarial guidelines rather than on the basis of "generally accepted medical standards," as required by the Plan; and second, that CIG-

NA requires doctors to obtain pre-authorization for "Outpatient Services," a requirement which is alleged to be absent from the terms of the Plan.

■■■ Neither of Weiss' allegations states a claim on which relief can be granted. The Plan clearly provides that it is CIGNA's responsibility to determine what treatment options are "Medically Necessary," (*see* Group Service Agreement at 6, 25), and there is no express statement in the Plan of the materials which CIGNA must use to make such determinations. Even accepting as true Weiss' allegation that CIGNA uses what are known as the Milliman & Robertson Guidelines when deciding the length of hospital stays, (Pl. Mem. at 24), and that such guidelines are "highly controversial," (*id.*), Weiss has not alleged that CIGNA relies on such guidelines to the exclusion of other factors, nor has she alleged that any of CIGNA's determinations of "Medical Necessity" have actually departed from "generally accepted medical standards," either in her own case or in the case of any other putative class member. Instead, her claim challenges the appropriateness of any or all such determinations, a speculative allegation untethered to the terms of the Plan.

■■■ Similarly, even taking as true Weiss' contention that CIGNA requires physicians to obtain pre-authorizations for "Outpatient Services," Weiss has failed to show why such a practice would violate any express or implied terms of the Plan. The GSA does not prohibit pre-authorizations in general and in-

---

**6.** To the extent that the result here is inconsistent with the decisions of the Eighth Circuit Court of Appeals in *Shea v. Esensten,* 107 F.3d 625 (8th Cir.1997), and of the District Court of New Hampshire in *Drolet v. Healthsource, Inc. et al.,* 968 F.Supp. 757 (D.N.H.1997), this Court respectfully declines to follow those decisions.

**7.** Weiss' claim is brought pursuant to ERISA § 502(a)(3), which permits a plaintiff to obtain equitable relief for the breach of any fiduciary duty, including the duty to honor the terms of the Plan. *See also* ERISA § 404(a)(1)(D). Notwithstanding Weiss' contention to the contrary, her claim may not be based on ERISA § 502(a)(1)(B), which permits a beneficiary to sue to "recover benefits due," to "enforce [her] rights," or to "clarify [her] rights to future benefits" under the terms of the Plan. A claim

brought under that section is essentially a contract claim, *see Tolle,* 977 F.2d at 1133, and as such Weiss lacks standing to proceed because she has failed to exhaust her administrative remedies. *See Kennedy v. Empire Blue Cross Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993). Weiss also lacks standing to proceed under that section because she has failed to allege a deprivation of current or future rights, or any other "injury in fact" sufficient to establish a case or controversy. The case law does not create an exception to the traditional injury requirement in contractual ERISA claims for benefits, as it does in fiduciary duty ERISA claims for prospective relief. *See Financial Institutions Retirement Fund v. Office of Thrift Supervision,* 964 F.2d 142, 147–49 (2d Cir.1992).

756

deed it specifically requires them for many types of services, including certain outpatient services. Plaintiff's reading of the GSA— which would convert the absence of an explicit requirement of pre-authorization into a prohibition of the same—is insufficient to establish any breach of the terms of the Plan. Moreover, Weiss has failed to explain how such an alleged violation, if true, has harmed or ever could harm her or any other putative class member. For all of the foregoing reasons, plaintiff's claim that CIGNA has violated the terms of the Plan is dismissed.

### CONCLUSION

For the reasons set forth above, defendants' motion is GRANTED in PART and DENIED in PART. Accordingly, the complaint is hereby dismissed, with the exception of plaintiff's claim pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), for breach of fiduciary duty arising from CIGNA's alleged "gag order" policy.