**Michael L. DIAMORE, Plaintiff**

**v.**

**AMERICAN HONDA MOTOR COMPANY, INC.**

**No. 3:01–CV–961 (EBB).**

United States District Court, D. Connecticut.

Dec. 30, 2002.

Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, Ian O. Smith. Moukawsher & Walsh, Groton, CT, Thomas G. Moukawsher, Moukawsher & Walsh, Hartford, CT, for plaintiff.

Zachary R. Osborne, Paul, Hastings, Janofsky & Walker, Stamford, CT, for defendant.

### RULING ON SECOND MOTION FOR SUMMARY JUDGMENT

ELLEN BREE BURNS, Senior District Judge.

### INTRODUCTION

This lawsuit arises out of a claim brought by Plaintiff Michael L. DiAmore ("DiAmore" or "Plaintiff") against his former employer American Honda Motor Company, Inc. ("Honda" or "Defendant") under the Employee Retirement Income Security Act of 1974 ("ERISA"). DiAmore alleges that he was induced to take early retirement due to misrepresentations regarding an upcoming modification in his retirement benefits, which would have given him additional funds on a monthly basis. Honda's first Motion for Summary Judgment, filed before discovery, was denied based on DiAmore's affidavit. This Court held that there were genuine issues of fact regarding DiAmore's knowledge of the enhanced plan when he retired prior to its inception. Now that discovery has been completed, Honda again moves for summary judgment.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are distilled from the Complaint, the parties memoranda of law and exhibits thereto, and their Local Rule 9(c) Statements.

DiAmore was employed by Honda from September 21, 1978 until his early retirement on October 12, 1999. During this period, he was a participant in the American Honda Retirement Plan (the "Plan"). DiAmore currently receives early retirement benefits from the Plan of approximately $1,700 per month. Had he retired on or after January 1, 2000, he would receive approximately an additional $255 a month in early retirement benefits from the Plan.

Since 1987, when Honda implemented a voluntary separation program, DiAmore testified that he had heard "ongoing, pretty consistent" rumors that Honda would be offering some sort of early retirement incentive for Plan participants. Accordingly, in November, 1998, he contacted Natalie Enoki ("Enoki"), Honda's Manager of Compensation, Benefits and Payroll, to ask whether any early retirement enhancement benefits were planned. DiAmore testified that Enoki informed him that nothing was currently planned, but that the Company evaluated such matters routinely.

Also in November, 1998, DiAmore was considering seeking employment outside of Honda because he believed that his career advancement opportunities at Honda had become limited.

DiAmore testified and Enoki has averred that DiAmore called her again in late May or early June, 1998, to inquire as to whether any early retirement incentives were planned. DiAmore testified that Enoki again informed him that nothing

was currently planned, but that the Company "evaluated such matters routinely". Enoki never spoke with DiAmore again before his retirement. DiAmore testified that he had called her one more time, but never bothered to leave a message on her voice-mail.

On July 16, 1999, subsequent to his conversation with Enoki, DiAmore alleges that he asked Ira Yawnick ("Yawnick"), a Honda benefits employee who was visiting Honda's Windsor, Connecticut offices, whether "there was any early retirement program in the works" at Honda. DiAmore testified that, once again, Yawnick replied that he was "unaware of anything."

On or about July 23, 1999, DiAmore was offered a position with New Piper Aircraft Co., Inc. ("Piper") in Florida. On or about August 11, 1999, DiAmore sent a letter to Piper formally accepting the offer of employment, indicating a start date of September 13, 1999.

Also on August 11, 1999, DiAmore provided notice to Honda of his intent to take early retirement. However, he also wanted to extend his formal retirement date as far out as possible by using his accrued vacation time. Honda requires that employees actually work their last day prior to retirement and permits accrued vacation time to be used to extend a retirement date up to four weeks. Accordingly, in a memo to his supervisor, DiAmore requested that his retirement become effective on October 12, 1999 and that his last day of work would be October 11, 1999. Honda agreed to DiAmore's request and his second to last day of employment was Friday, September 10th. He planned to fly up from Florida to work his official last day on October 11, 1999.

After July 16, 1999 and prior to the week of September 27, 1999, DiAmore testified that he made no further inquiries about an incentive program. His next inquiry was made during the week of September 27, 1999, from Florida. He called Ellen Larimer, a Honda benefits employee who was helping him process his retirement forms. DiAmore asserts that he asked Larimer about rumors that Honda would be offering an earlier retirement incentive. According to DiAmore, Larimer confirmed the rumors but said she had nothing specific to tell him.

On or about June 29, 1999, Enoki was first asked by her supervisor, Gary Kessler ("Kessler") to take a leadership role in gathering and analyzing information on a wide variety of potential options for enhancing Honda's early retirement benefits. Her uncontradicted affidavit demonstrates that she began this investigation long after she had last spoken with DiAmore.

Over the next several months, Enoki worked with other executives in gathering and analyzing information on a wide variety of potential options for enhancing the retirement plan. Neither Larimer nor Yarnick was part of this executive team.

Between August 11 and September 23, Honda's executive team priced and re-priced a number of early retirement benefit enhancement options with an outside actuarial consultant and prepared to make a presentation to the Board of Directors of Honda.

The Board was presented with three early retirement options by Enoki and Kessler on September 24, 1999, and on that date the Board voted to amend the Plan by adopting one of the early retirement enhancement options presented. The enhancement only applied to people retiring after January 1, 2000.

DiAmore flew to Connecticut for his last day of work, October 11. On that date, he was advised of the early retirement enhancement. Prior to this date, DiAmore had set for himself a final cut-off date of October 7 in order to see if Honda was

going to offer enhancement benefits. Neither Honda nor Piper set this date. Rather, it was self-imposed by DiAmore on his own.

After being officially advised of the enhancement DiAmore never: (1) asked Honda about the possibility of delaying his retirement; (2) made any actual request to delay his retirement; (3) contacted Piper to ask that he be granted extended time off to return to Honda. At his deposition, when asked what he would have done had he known of the enhancement, he testified that he "didn't know." Instead, he went back to Piper full time and then demanded that Honda provide him the benefits enhancement based on the fact that the enhancement decision was made prior to his retirement and on the two Enoki conversations. His request was rejected because he retired prior to January 1, 2000. His appeal of this decision was also rejected.

This lawsuit followed, claiming breach of fiduciary duty by the ERISA fiduciary and material misrepresentations made to him by Enoki.

### *LEGAL ANALYSIS*

#### I. *The Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also, Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist, "[o]nce that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." *Sylvestre v. United States,* 771 F.Supp. 515, 516 (D.Conn.1990).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. *Lamontagne v. E.I. Du Pont de Nemours & Co.,* 834 F.Supp. 576, 580 (D.Conn.1993), *aff'd* 41 F.3d 846 (2d Cir.1994).

The court is mandated to "resolve all the ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d cir.), *cert. Denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the impact of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. Denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505 (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in its favor). *See also, Reeves v. Sanderson Plumbing Products, Inc.,*

530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## II. *The Standard as Applied*

 ERISA imposes a fiduciary duty on employers with retirement plans to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(z). The Second Circuit held in *Mullins v. Pfizer* that a plan administrator may not make affirmative material misrepresentations about proposed future changes to an employee benefit plan. *Mullins*, 23 F.3d 663, 669 (2d Cir.1994). Such material misrepresentations are a breach of the fiduciary duty. *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122 (2d Cir.1997). When an ERISA fiduciary makes guarantees regarding future benefits that misrepresent present facts, the misrepresentations are material if they would induce a reasonable person to rely on them. *Id.* A misrepresentation must be material in order to be actionable. *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2d Cir.1996).

 The difficulty with DiAmore's position is that no one made any misrepresentations to him, let alone material ones. In November, 1998, through the early summer of 1999, DiAmore testified that Enoki advised him that nothing was currently planned, but the Company "evaluated such matters routinely." These statements were true when made; thus there could be no present material misrepresentations about future events. It was not until June 29, 1999, that Honda even began to consider such an enhancement plan. It was not until September 23, 1999 that the Board approved one of the three proffered options for those who retired after January 1, 2000.

Inasmuch as neither Larimer nor Yawnick had anything to do with the discussions about the possible enhancement, nothing they could have said to him was a misrepresentation.

As a matter of law, no statements made to DiAmore misrepresented the present status of internal deliberations. Accordingly, there is no breach of the fiduciary duty and summary judgment must be granted.

## CONCLUSION

Plaintiff has failed to set forth any genuine issues of material fact upon which he would bear the burden at trial, Resultingly, Defendant's Second Motion for Summary Judgment [Doc. No. 37]is hereby GRANTED. The parties shall bear their own fees and costs. The Clerk is directed to close this case.

SO ORDERED.