Helen DEBRECENI, etc.,
Plaintiff, Appellee,

v.

MERCHANTS TERMINAL CORPORA-
TION and Terminal Refrigeration and
Warehousing Corporation, Defendants,
Appellants.

No. 89–1349.

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1989.

Decided Nov. 3, 1989.

Dwight C. Smith III with whom Arvid E.
Roach II and Covington & Burling, Wash-
ington, D.C. were on brief, for defendants,
appellants.

James T. Grady with whom Gerard F.
Daley and Grady and Dwyer, Boston,
Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge,
BOWNES, Circuit Judge, and
GARRITY,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The question presented by this appeal is
whether an employer who is withdrawing
from a multiemployer pension plan, and
who is assessed by the plan a certain sum
purportedly representing the employer's
withdrawal liability, must pay that amount
forthwith, or whether the employer may
refuse to pay pending mandatory arbitra-
tion of the amount, if any, it owes.

The suit from which this appeal is taken
was brought in the district court under the
Employee Retirement Income Security Act
of 1974, 29 U.S.C. § 1001, *et. seq.*
("ERISA"), as amended by the Multiem-
ployer Pension Plan Amendments Act of
1980, 29 U.S.C. § 1381, *et seq.* ("MPPAA").
Merchants Terminal Corporation and Ter-
minal Refrigerating & Warehousing Corpo-
ration ("Merchants") appeals from a judg-
ment of the district court ordering it to pay
to Helen Debreceni, Fund Manager for the
New England Teamsters and Trucking In-
dustry Pension Fund (the "Fund"), on an
interim basis (i.e., prior to the final determi-
nation of the arbitrator as to the actual
amount owing under the MPPAA), the full
amount of withdrawal liability payments
assessed by the Fund pursuant to 29 U.S.C.
§ 1399(b), plus interest. The amount of

* Of the District of Massachusetts, sitting by desig-   nation.

withdrawal liability of Merchants to the Fund is in dispute and is presently being arbitrated under the mandatory arbitration provision of the MPPAA, 29 U.S.C. § 1401(a). Merchants insists that the district court erred in ordering it to make immediate payment of the amount assessed by the Fund. It believes that it should be required to pay the assessment only after the amount of its liability is finally established by the arbitrator.

## I.

Under ERISA, as amended by the MPPAA, an employer who withdraws from a multiemployer pension plan is liable to the plan for withdrawal liability payments representing its fair share of the plan's unfunded vested benefits ("UFB"). The district court ordered Merchants, the parent company of a participating employer that had withdrawn from a multiemployer pension plan due to bankruptcy, to pay the full amount plus interest assessed as withdrawal liability payments by the multiemployer pension fund in question (the "Fund"), pending arbitration of the dispute as to the amount of the liability.

The MPPAA provides that withdrawal liability payments are to be calculated by the Fund on a unilateral basis and assessed to the withdrawing employer according to a schedule set up by the Fund, with payments to begin within 60 days after the date of demand by the Fund, § 1399(b)(1). The withdrawing employer has the right to request the Fund to review its determination as to the amount of the liability, but the amount assessed is payable according to the above schedule, § 1399(b)(2), notwithstanding any such request, § 1399(c)(2).[1]

The MPPAA also provides that disputes as to the amount of the employer's withdrawal liability are to be submitted to arbitration. ("Any dispute ... concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a).) Payments made pending a final decision by the arbitrator as to ultimate withdrawal liability are referred to by the parties as "interim payments." Should the arbitrator later find that the interim payments made in accordance with the schedule established by the Fund have resulted in an overpayment of withdrawal liability, the arbitrator is to order a full refund of the amount of the overpayment, with interest, in a lump sum. 29 U.S.C. § 1401(d); 29 C.F.R. § 2644.2(d) (1985).

## II.

Merchants' appeal is based primarily upon the statutory argument that 29 U.S.C. § 1401(a)(1), which requires the arbitration of all disputes arising under 29 U.S.C. §§ 1381–91, encompasses not only disputes as to the amount of the employer's withdrawal liability but disputes as to the existence of a duty to make the interim payments as well.

To buttress its statutory argument, Merchants argues that while the statute may confer power on the district court to order interim payments in the appropriate situation (such as when an arbitrator has already decided that interim payments must be made or when the withdrawn employer has not requested submission of the issue to the arbitrator), the district court has equitable discretion *not* to grant such payments. Thus, Merchants argued below,

> To be sure, there are ... a number of court decisions ordering interim payments to be made. But whether the courts have the *power* to order interim payments is not the issue here. What is crucial here is that such power—assuming that it does exist—must be governed by considerations of *equity*, and that the equitable prerequisites to its exercise are lacking in this case.

---

1. The MPPAA provides:
   "Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of the amount of such liability or of the schedule."
   29 U.S.C. § 1399(c)(2).

According to Merchants, the Fund has unclean hands and was therefore not entitled under equitable principles to an order requiring interim payments. Merchants submits that certain breaches of statutory duty on the part of the Fund (specifically, the duty to review the withdrawal liability determination upon request by the employer and the duty to provide information relevant to the calculation of the withdrawal liability, *see* 28 U.S.C. §§ 1399(b)(2)(A), 1401(e),) were equitable considerations militating against the granting of a court order to Merchants to make interim payments.

In defense, the Fund argues that the statute creates an absolute duty to make interim payments within 60 days after the assessment by the Fund, a duty that the district court must enforce regardless of the existence of the arbitration provision or of equitable considerations.

Merchants says there is a strong possibility that the amount of withdrawal liability that has been assessed to it by the Fund will be reduced substantially or even negated entirely by the arbitrator. Consequently, it is unfair for it to have to pay the entire amount assessed by the Fund in advance—particularly in light of the Fund's asserted failure to review its assessment upon request or to provide Merchants with information needed to make its own calculations as to whether it was assessed appropriately. Full discovery, including depositions, interrogatories, and requests for production of documents for the arbitration proceedings, is available in the arbitration under the regulations promulgated pursuant to ERISA, *see* 29 C.F.R. § 2641.4(a)(2). Merchants argues that the arbitrator will eventually be in a much better position than the judge to assess the merits of Merchants' assertion that the Fund's assessment was unreasonable.

The district court agreed with the Fund. The district court found that the duty to make interim payments within 60 days of assessment was a simple statutory duty enforceable by court order and that no inquiry into equitable considerations was called for. The court further found that even *had* such an inquiry been appropriate

(a proposition the court declined to accept), it could find no equitable consideration sufficient to negate the requirement that it order interim payments by Merchants.

The district court noted three local decisions of the Massachusetts District Court holding that an employer must make scheduled withdrawal payments when due "even if the employer disputes the Fund's determination of withdrawal liability," *see, e.g., Debreceni v. George Lamoureux & Co.,* 629 F.Supp. 598, 600–01 (D.Mass.1986), as well as several circuit courts precedents that supported its interpretation.

### III.

*The Statutory Requirement*

■ The foregoing arguments require us to inquire, as an initial matter, whether the MPPAA imposes an enforceable duty on the withdrawn employer—independent of its right to require the Fund to submit to mandatory arbitration—to make interim withdrawal payments in accordance with the payments schedule set up by the Fund.

This circuit has not yet addressed directly whether the statute requires a withdrawing employer to make the installment payments specified by the Fund pending the outcome of arbitration, although we have held that such a requirement would not violate due process. *See Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund, Inc.,* 762 F.2d 1124, 1136 (1st Cir.1984), *rev'd on other grounds,* 762 F.2d 1137 (1985) (en banc) (while noting that we *could* interpret the statute to require the employer to begin paying only *after* the arbitration, we declined to decide the question). *See also Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628, 641–42 & n. 16 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) ("Depending upon how the [MPPAA] is read, [the employer] may be required to make installment payments as they come due in order to avoid a default, which would have the effect of accelerating its total liability, or it may not be required to pay anything while

it exercises its right to review or arbitration.").

We now hold that the district court correctly ruled that, under the terms of the MPPAA, the assessed interim liability payments must be paid to the Plan notwithstanding a pending arbitrable dispute. These payments are mandated by the language of the MPPAA (emphasis supplied):

Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal of determinations* of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2).

Merchants argues that the language of the mandatory arbitration provision of the MPPAA[2] is broad enough to encompass arbitration of disputes over whether the employer must pay its interim withdrawal liability assessments. Like the other courts that have considered the matter, however, we think the better harmonization of the various statutory provisions in the MPPAA is achieved by giving effect to the plain language of § 1399(c)(2), which calls for payment of withdrawal liability in accordance with the Plan sponsor's schedule "notwithstanding any request for review or appeal of determinations...."

Under such a reading, Merchants is fully entitled to submit any dispute as to the existence and amount of its withdrawal liability to the arbitrator but must, while arbitration proceeds, make interim payments according to the schedule established by the Fund within 60 days of the Fund's demand. Even assuming Merchants is forced to make interim withdrawal liability payments that later turn out to be excessive, it will "not [be] at risk of losing its money or even the time value of the money since it will receive interest on the amount refunded," *I.A.M. National Pension Fund Benefit Plan A v. Cooper Industries, Inc.*, 789 F.2d 21, 25 (D.C.Cir.), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). Regulations promulgated by the Pension Benefit Guaranty Corporation ("PBGC") (a government corporation established by ERISA to insure employees' benefits against a plan's termination for insufficient funds and to enforce the provisions of Title IV of ERISA) specifically provide that any overpayments are to be returned with interest.[3] Thus, if the amount of the Fund's withdrawal liability assessment is found by the arbitrator to be unjustified, inflated, or inappropriate in any way, Merchants will be made whole.

To require the Fund, as Merchants desires, to submit to arbitration on the question of whether interim withdrawal liability payments need be made would result in a de facto suspension of such payments until the question is resolved by arbitration. If Congress had intended section 1399(c)(2) to be suspended in this way, we do not believe it would have inserted the words "notwithstanding any request for review or appeal of the amount of such liability or of the schedule"—or would, at least, have stated specifically its intention to suspend elsewhere in the statute.

Congress's intent in enacting the MPPAA reflects policy considerations consistent with this interpretation. Before the MPPAA was enacted, a significant number of multiemployer pension plans were in danger of financial collapse. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 721, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984). Existing law aggrava-

2. "Any dispute ... concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a).

3. (d) **Overpayments.** If the plan sponsor or an arbitrator determines that payments made in accordance with the schedule of payments established by the plan sponsor have resulted in an overpayment of withdrawal liability, the plan sponsor shall refund the overpayment, with interest, in a lump sum. The plan sponsor shall credit interest on the overpayment from the date of the overpayment to the date on which the overpayment is refunded to the employer at the same rate as the rate for overdue withdrawal liability payments, as established under § 2644.3 or by the plan pursuant to § 2644.4.

PBGC Regulations on Withdrawal Liability in Multiemployer Plans, 29 C.F.R. § 2644.2 (1988).

ted the problem by creating unintended incentives for employers to withdraw from these troubled plans to avoid future liability. The MPPAA was designed to eliminate those incentives for withdrawal and to strengthen multiemployer plans so that employees and their beneficiaries would not be deprived of anticipated retirement benefits. *Id.* at 720, 722–23, 104 S.Ct. at 2714–15. Congress believed that plan beneficiaries should have a right to rely on the continued solvency of the plans, and that the viability of such plans should not be put unnecessarily at risk by subjecting them to lengthy delays in their ability to collect withdrawal liability payments.

Requiring withdrawing employers to make withdrawal payments "up front" is consistent with the foregoing policy. The purpose of section 1399(c)(2) would appear to be to protect the stability and solvency of the plans and cushion the shock to plan management and other participating employers created by the sudden withdrawal of a plan participant. The "pay now, dispute later" feature of the MPPAA, *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986), functions to preserve plan cash flow and to thwart the use of dilatory tactics by employers. Were we to adopt Merchants' interpretation, the payment of withdrawal liability on an interim basis by withdrawn employers might largely disappear, because employer requests for arbitration on the issue of their liability for interim payments would become a standard ploy to delay employer obligations to initiate payments.

To be sure, there is always some risk that the Fund will overassess a withdrawing employer. However, the employer's right to invoke mandatory arbitration, and to secure repayment with interest, leaves the Fund with little incentive to overassess deliberately. As the Fund has the expertise to calculate accurately the amount of the employer's withdrawal liability, it is reasonable to suppose that it will assess fairly and accurately in the vast majority of cases.

At least three other circuits have similarly decided that withdrawal liability payments are required pending arbitration. The Third Circuit in *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128 (3d Cir.1986) held that there is a cause of action to collect withdrawal liability pending arbitration.

The Sixth and the Ninth Circuits as well agree that interim payments must be made pending arbitration. *See Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 814 F.2d 297, 299 (6th Cir.1987) (Even though "there was no strong likelihood that the Fund would succeed on the merits," it is clear that "during the pendency of any dispute ... interim payments of withdrawal liability must be made to the Plan."); *Trustees of Amalgamated Insurance Fund v. Geltman Industries, Inc.*, 784 F.2d 926 (9th Cir.), *cert. denied*, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986) ("an employer must make payments within 60 days of the pension plan's demand, regardless of the pendency of arbitration"; failure to do so constitutes a delinquency, which entails a mandatory award of attorney's fees in any collection action); *Lads Trucking Co. v. Board of Trustees*, 777 F.2d 1371, 1375 (9th Cir.1985) ("We have enforced the requirement of payment during arbitration.... [F]ailure to make payments pending arbitration within the time prescribed by ERISA ... is governed by sections 1399(c)(2) and 1451(b) which make clear that the employer must commence payments within sixty days of the pension plan's demand regardless of any review proceeding.... Section 1401(d) is necessary to cover the separate situation where an employer has failed to make payments pursuant to an arbitrator's decision.")[4]

---

4. *Lads,* in the language quoted here, directly addresses another of Merchants' statutory arguments: that the difference between § 1401(b) and § 1401(d) demonstrates the intent of the legislature to create a cause of action to enforce interim withdrawal liability payments only *after* a final decision by the arbitrator. Section 1401(b) authorizes a collection action by a plan

Finally, we note that the PBGC, the agency charged with enforcing the provisions of ERISA and with the insuring of benefits under defined single-employer and multiemployer pension plans, adopts an interpretation of the statute identical to the one we espouse. The PBGC has long interpreted the statute to provide a right of action to enforce an employer's interim payment obligation. In the preamble to the PBGC's regulation concerning notice and collection of withdrawal liability (*codified at* 29 C.F.R. pt. 2644 (1988)), the agency stated:

> PBGC agrees that some clarification is needed concerning the ability of plans to sue during the pendency of arbitration for missed withdrawal liability payments. Under ERISA sections 4219(c)(2) [29 U.S.C. § 1399(c)(2)] and 4221(d) [29 U.S.C. § 1401(d)], employers are required to make scheduled payments while a dispute is in arbitration. This requirement protects plans against financial loss with respect to employers who have ceased contributing to a plan. While the provisions of sections 4219 [29 U.S.C. § 1399] and 4301 [29 U.S.C. § 1451] are not entirely clear on this point, PBGC believes that it was the intent of Congress to give plans a legal remedy to enforce this requirement, for without a means of enforcement, this protection may be largely illusory.

49 Fed.Reg. 22,644 (1984).

We, therefore, agree with the district court, with the Third, Sixth, and Ninth Circuits, and with the PBGC in holding that the MPPAA empowers a court to order the making of interim withdrawal payments forthwith, notwithstanding the pendency of arbitration of a fund's withdrawal claim.

### Equitable Considerations

■ A further question is whether a district court may take equitable considera-

tions into account when deciding whether or not to enforce interim withdrawal liability payments by an employer. Merchants' contends that the court should weigh the equities in deciding whether to order interim payments and that the equities here favor declining to order interim payments by Merchants. We need not decide whether there would ever be equitable considerations that might justify a court's refusal to enforce interim withdrawal liability payments. We hold here that if any equitable exception exists, it would be limited to certain very specific circumstances that are entirely absent here.

The only precedent to support Merchants' view that the district court has equitable discretion not to order interim withdrawal payments turns on whether interim payments would inflict irreparable injury on the withdrawn employer. ("Ordinarily, in the absence of a demonstration that making interim payments would inflict irreparable injury on an employer, a court should enforce the interim payments requirement without examining the merits of the underlying dispute concerning withdrawal liability." *Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 686 n. 4 (7th Cir.1987).) *See also Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.–DC, Inc.*, 826 F.2d 320 (5th Cir.1987). In the instant case, it was not argued that making the interim payments would inflict irreparable injury on the employer. Rather, Merchants argued that the breach by the Fund of its statutory duties to review its assessment upon request by Merchants and to provide information relating to its calculation of Merchants' withdrawal liability were equitable considerations that compelled the district court to deny interim payments. The district court rejected this argument, noting that the discovery procedures available in the ongoing arbitration, *see* 29 C.F.R.

---

sponsor *to enforce interim payments according* to the payment schedule the plan sponsor has set forth in the event that *no* arbitration proceeding has been initiated; and § 1401(d) states that an employer shall be treated as delinquent in its withdrawal liability payments if it fails to make timely payments in accordance with an arbitrator's *final* decision, but mentions no

cause *of action to enforce interim payments.* The court in *Lads,* however, reads §§ 1399(c)(2) and 1451(b) to mandate interim withdrawal liability payments even where arbitration has been initiated; and states that § 1401(d) refers only to the separate situation where an employer has not made payments pursuant to an arbitrator's decision.

§ 2641.4(a)(2), were fully competent to satisfy Merchants' information requests. We think it clear that a mere failure on the part of the Fund to provide information upon request could not constitute an equitable consideration mitigating the duty of the employer to make interim withdrawal liability payments.

The cited precedents, moreover, were based on a position the PBGC now seems to have abandoned. In *McNicholas* the Seventh Circuit quotes as follows from an amicus brief submitted in *T.I.M.E.—DC, Inc.* by the PBGC.

> First, the interim payment requirement is not self-enforcing, and the Central States Fund had not asked the court to compel interim payments. If the Fund had later sought to compel interim payments, T.I.M.E.–D.C. could have argued both irreparable injury and the merits to the court at that time.

*McNicholas*, 819 F.2d 682, 686 (7th Cir. 1987).

Another case, *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1253 (3d Cir.1987) apparently picks up the same concept from *McNicholas* when it states, "Even if the plans succeed in winning an arbitrator's judgment, they would still have to obtain a court order to compel payments from Tiger. [citations omitted] At that point in time, Tiger could present evidence that it faced irreparable injury."

In the amicus brief submitted in the instant case, however, the PBGC contends, in the words of the lower court, that enforcement of interim payments is a "relatively mechanical statutory obligation for the courts, and not the occasion for an extended factual inquiry...." It goes on to state that: "[Proceedings to enforce interim payments] are intended to be routine collection actions where the courts should not weigh equities." Amicus Brief, at 6. Thus, insofar as the notion of equitable considerations derives from a position the PBGC once took in its 1986 amicus brief, that position may have been rescinded, weakening the above cases on that point.[5]

We need not decide, however, whether any exception to the duty to make interim withdrawal liability payments exists for the situation in which an employer would suffer irreparable harm.[6] Even with the benefit of such an exception, Merchants could not prevail here. Merchants has not claimed irreparable injury, and thus cannot qualify for relief from the order to make interim withdrawal payments on the basis of such a standard.

We note in passing that even if it were the case that a broader range of equitable considerations could be appropriately taken into account, Merchants would still be unable to win on this appeal. The district court's analysis of the equities in this particular situation—that they do not necessarily favor Merchants—seems to us to be correct. As the district court noted, "given

---

**5.** The Supreme Court has stated in a recent opinion that "In deciding these issues, the Court of Appeals should consider the views of the PBGC and the IRS." For a court to attempt to answer these questions without the views of the agencies responsible for enforcing ERISA, would be to "embar[k] upon a voyage without a compass." [citation omitted] *Mead Corp. v. Tilley*, — U.S. —, 109 S.Ct. 2156, 2164, 104 L.Ed.2d 796.

**6.** Irreparable harm to the withdrawn employer would *seemingly* require no less than the threat of *imminent insolvency,* as it is hard to imagine a lesser degree of injury that would bear classification as "irreparable." As noted above, even where the withdrawing employer is forced to make withdrawal liability payments that later turn out to be unjustified, it will receive back not only its money but the time value of the

money as well (in the form of interest) once the arbitrator has made his final decision. *See I.A.M. National Pension Fund Benefit Plan A v. Cooper Industries, Inc.,* 789 F.2d 21, 25 (D.C. Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). *See also McNicholas,* 819 F.2d at 685 ("compelled payment of money, recoverable with interest upon later determination of error, is not, in itself, irreparable harm"). Neither is the harm of having to wait until after the arbitrator's award to receive a refund of any payments that have been improperly assessed "irreparable." The Supreme Court has noted that irreparable harm must be "greater than the harm suffered by any litigant forced to wait until the termination of the [arbitration proceedings] before challenging [ ] orders it considers erroneous." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379 n. 13, 101 S.Ct. 669, 676 n. 13, 66 L.Ed.2d 571 (1981).

the length of time [over three years] Merchants waited before initiating the arbitration process where enforceable discovery is available, the claim of failure to provide information smacks of a pretext confected to provide a colorable basis for avoiding interim payment liability."

### Other Arguments by Merchants

In addition to its arguments from the statute and its arguments based on equity, Merchants also tries to buttress its position by stating that considerations of exhaustion of remedies and primary jurisdiction call for deference to the arbitrator. Several cases have in fact held that the doctrine of exhaustion applies to disputes as to withdrawal liability determinations. See, e.g., Teamsters Pension Trust Fund v. Allyn Transportation Co., 832 F.2d 502, 504–5 (9th Cir.1987) (whether a "complete withdrawal" within the meaning of § 1383 occurred before the effective date of the MPPAA); Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1247–49, 1252–55 (3d Cir.1987) (whether a holding company's sale of stock in its subsidiary was to "evade or avoid" liability for purposes of § 1392(c)); Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.–DC, Inc., 826 F.2d 320, 328–29 (5th Cir.1987) (whether the labor dispute exception to the MPPAA found in § 1398 applied to a particular employer against whom withdrawal liability had been assessed); I.A.M. National Pension Fund v. Clinton Engines Corp., 825 F.2d 415, 417–18 (D.C.Cir.1987) (whether an employer that had been assessed "withdrawal liability" was required to arbitrate its asserted defenses in order to preserve those defenses for ultimate judicial consideration). These cases, however, become irrelevant in light of our decision that a dispute as to the payability of interim withdrawal liability is not a matter for arbitration under 29 U.S.C. § 1401(a). In addition, several cases have held directly contra to Merchants' argument. In Central States Southeast and Southwest Areas Pension Fund v. T.I.M. E.–DC, Inc., 826 F.2d 320, 327 (5th Cir. 1987), the court states "The statute … contains no language … indicating a con-

gressional intent to vest original jurisdiction exclusively in the arbitral tribunal envisaged by the MPPAA." Consequently, "the MPPAA's exhaustion of administrative remedies requirement is not jurisdictional." Id. at 328. The opinion cites cases from the D.C. Circuit and the Second Circuit that hold similarly. See I.A.M. Nat'l Pension Fund Benefit Plan v. Stockton TRI Indus., 727 F.2d 1204, 1208 (D.C.Cir. 1984) ("courts of appeals that have addressed the question of arbitration under MPPAA have uniformly agreed that exhaustion is not an absolute requirement"); T.I.M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds, 756 F.2d 939, 945 (2d Cir.1985) ("the requirement of exhaustion of administrative remedies is a prudential matter within our discretion").

In addition, and for precisely the same reasons, Merchants' arguments on the issue of primary jurisdiction lack merit. There can be no primary jurisdiction where there is no jurisdiction at all. The cases Merchants cites are easily distinguishable in that they refer to the primary jurisdiction of the NLRB—a specialized agency charged with the administration of the National Labor Relations Act—a very different entity from an individual arbitrator resolving disputes under the MPPAA.

### The Fund's Request for Attorney's Fees and Costs

The Fund urges the court to sanction counsel for Merchants under 28 U.S.C. § 1927, which provides:

§ 1927. **Counsel's liability for excessive costs** Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Fund argues that where, as here, the weight of authority on a point of law is so clear that it is not plausible for a practitioner who specializes in a particular area to claim a good faith belief that the state of the law was either unclear or contrary to

the "unanimous" majority view, the award of costs and attorney's fees is especially appropriate. The Fund is correct in arguing that there is very strong support for the determination made below which we today affirm. Although counsel for Merchants must have realized that its chances for success were extremely small, however, we also recognize that the question had not been resolved by the Supreme Court or in this circuit. There was also dicta by this circuit and the Fourth Circuit that the statute was ambiguous and subject to the possibility of two interpretations. Further, as noted above, at the time the PBGC issued its regulation concerning notice and collection of withdrawal liability [*codified at* 29 C.F.R. § 2644 (1988)], the PBGC itself stated that it agreed that clarification was needed concerning the ability of plans to sue during the pendency of arbitration for missed withdrawal liability payments. 49 Fed.Reg. 22,644 (1984). Thus, at the outset, even the PBGC recognized that there was some ambiguity in the statute.

In regard to Merchants' equitable discretion arguments, precedents to the effect that courts have equitable discretion not to order interim withdrawal payments indeed exist, but all of them are limited to the situation of "irreparable injury." Still, we cannot quite say that the argument is so lacking in merit as to be frivolous or "unreasonable and vexatious."

We conclude that while we find little merit in the appeal, it was not so unreasonably and vexatiously multiplicative of litigation as to warrant the imposition of costs and attorney's fees as a penalty.

*Conclusion*

In summary, the MPPAA creates an enforceable duty on the part of the withdrawn employer—not subject to any requirement that the plan sponsor submit first to mandatory arbitration on the question—to make interim withdrawal payments in accordance with the payment schedule set up by the plan sponsor. As for equitable considerations in the form of irreparable injury to the employer which might be sufficient to hold that duty in abeyance, we need not decide this question here, for no such situation has been found to exist in the present case.

Finally, the Fund's request for attorney's fees and costs is denied.

*Affirmed.*

*Ordinary costs are taxed against appellant.*