QST v. OHM                        CV-98-572-M    09/27/00
                        UNITED STATES DISTRICT COURT

                         DISTRICT OF NEW HAMPSHIRE


QST Environmental, Inc., f/k/a
Environmental Science & Engineering, Inc.,
      Plaintiff

      v.                                   Civil No. 98-572-M
                                           Opinion No. 2000 DNH 200
OHM Remediation Services Corp.;
National Union Fire Insurance Company
      of Pittsburgh, PA; and
United National Insurance Company,
      Defendants


                          **O R D E R**


      Defendant, OHM Remedial Services Corp. ("OHMRS") moves to

dismiss plaintiff's first amended complaint on grounds that it

fails to state a cause of action upon which relief may be

granted.  Plaintiff objects, but it's reasoning is fairly

elusive.  Given the facts as asserted by plaintiff, however, it

is clear that plaintiff has not described a cognizable cause of

action against OHMRS.

      As plaintiff pleads its case, the facts are as follows.

EnergyNorth Gas, Inc. ("ENGI"), entered into a contract with

plaintiff (formerly known as Environmental Science & Engineering,

Inc., and referred to hereafter as "ESE") under which plaintiff would carry out clean-up operations at an environmentally contaminated site owned by ENGI. ESE in turn subcontracted with OHMRS to perform work at the site. During the course of the work, an employee of OHMRS, Thomas Shoemaker, was severely injured. His legal guardians brought suit against ENGI, ESE, and OHM Corporation (OHMRS' parent – Shoemaker of course could not bring a direct action against his employer, OHMRS, for work related injuries). Since ESE's subcontract with OHMRS included a rather broad indemnity clause, requiring OHMRS to indemnify and hold ESE harmless from any liability for damages arising out of the negligent acts or omissions of OHMRS' employees and agents, and since Shoemaker was injured on the job while carrying out subcontracted work, ESE naturally expected OHMRS to indemnify and hold it harmless from any liability it might have for Shoemaker's injuries due to the negligent acts or omissions of OHMRS' employees and agents.

Eventually, a settlement effort was undertaken in which all parties participated. Putting aside the various accusations regarding who did and did not "participate in good faith" in the

2

settlement discussions, a partial settlement was achieved. ENGI, OHM, and OHMRS settled with the Shoemaker plaintiffs, paying a substantial sum in exchange for releases and an agreement by the Shoemaker plaintiffs to indemnify them with regard to any claims that might be brought against them [i.e., by ESE] arising from the underlying facts. ESE did not participate in the settlement. However, the conclusion is inescapable that the settlement resolved any and all claims that might have been brought by the Shoemaker plaintiffs against anyone (including ESE) based upon the negligence of ENGI, OHM, OHMRS, or their employees and agents.

Apparently some outstanding claims by the Shoemaker plaintiffs against ESE remained unsettled. It is not clear what the nature of those claims was, but they necessarily fell within one of two categories. Those claims either asserted liability on ESE's part due to ESE's own independent negligence, or they asserted liability on ESE's part on a respondeat superior theory — that ESE was legally liable to the Shoemaker plaintiffs due to the negligence of its employees or agents (i.e., OHMRS and its employees). Whatever the nature of those claims, however, ESE

3

also subsequently entered into a settlement agreement with the Shoemaker plaintiffs, paying a substantial sum and agreeing to indemnify them for any claims that might be brought against them based on the underlying facts (i.e., by OHMRS on the indemnity obligation the Shoemakers owed).

After reaching its own settlement, ESE sued OHMRS and its insurers for breach of the subcontract's indemnity agreement and breach of the covenant of good faith and fair dealing implied in every New Hampshire contract. See, e.g., Renovest Co. v. Hodges Development Corp., 135 N.H. 72, 81 (1991)("Under New Hampshire law, every contract contains an implied covenant of good faith performance and fair dealing."). Of course OHMRS could then claim indemnity from the Shoemakers, who would simply pay that indemnity claim back to ESE under their settlement agreement. Apparently recognizing that circularity, ESE later withdrew its breach of contract claim because, it says, "it was forced to give up its indemnity claim to effect a settlement with the [Shoemaker plaintiffs]." Nevertheless, ESE continues to press its breach of the covenant of good faith and fair dealing claim. Unfortunately,

4

however, the pleadings are particularly vague in describing just what that claim entails.

ESE seems to say that OHMRS did not deal fairly or in good faith under the indemnity clause of the subcontract because it "knew, or in the exercise of reasonable care should have known, that ESE would be damaged by [OHMRS'] actions in entering the settlement it entered with the Shoemaker plaintiffs on or about September, 1998." As a result, ESE says, OHMRS caused it damage, including "enhanced exposure to an adverse verdict [presumably in favor of the Shoemaker plaintiffs if their case against ESE went to trial], costs, expenses, interests, and attorney's fees." ESE adds:

> Specifically, ESE contends that it was forced to make a payment in settlement to the Shoemaker plaintiffs which it would not have been required to make but for the breach of the implied covenant of good faith and fair dealing. " . . . OHMRS knew, or in the exercise of reasonable care should have known, that ESE would be damaged by its actions in entering the settlement it entered with the Shoemaker plaintiffs on or about September, 1998. ESE contends not only that the settlement was made without its knowledge but, also, that an integral part of the settlement, <u>the making of an indemnity agreement with the Shoemakers, was a breach of the obligation of OHMRS to deal fairly and in good faith with ESE</u> because the existence of such an agreement literally turned the interest of OHMRS in the outcome of the litigation on its head. That is,

5

whereas prior to the time of the settlement the interest of OHMRS was to do all in its power to assist ESE in defending against the allegations of the Shoemakers because it would be exposed under the indemnity agreement only if ESE was unsuccessful in so doing, the interest of OHMRS changed completely once the Shoemakers agreed by written indemnity agreement to assume all obligations OHMRS had assumed to provide indemnity to ESE.

* * *

[O]nce OHMRS made the settlement with the Shoemakers, it stopped cooperating with ESE even to the extent of refusing to commit to supply witnesses absolutely essential to the trial of the case despite repeated requests by ESE counsel during the period from early October until the end of the third week of November, two weeks before trial was to commence. Prior to the Shoemakers' settlement with OHMRS, when the interests of ESE and OHMRS were aligned, ESE and OHMRS cooperated fully in all matters having to do with the presentation of ESE defenses at trial.

Objection to OHMRS Motion to Dismiss (document no. 47) pp. 5-7

(emphasis supplied).

Against that backdrop, OHMRS moves to dismiss the complaint against it for failure to state a viable claim. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683,

6

1686, 40 L.Ed.2d 90 (1974).  Accordingly, the factual averments in plaintiff's complaint are taken as true, "indulging every reasonable inference helpful to the plaintiff's cause."  Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir.1992); see also, Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.1989).  In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990)).

Given the facts it has pled, ESE cannot recover on any viable legal theory, for several reasons.  First, it is clear that by executing a settlement agreement with the Shoemaker plaintiffs in the underlying suit, OHMRS completely and fully performed it's contractual obligation to ESE under its indemnity agreement.  That is, OHMRS paid a substantial sum to obtain a release from the Shoemaker plaintiffs for all claims they might have had against OHMRS as well as any derivative claims, against ESE based upon respondeat superior liability arising from the

7

acts or omissions of OHMRS or its employees and agents. Second, OHMRS owed ESE no legal duty not to settle claims brought by the Shoemaker plaintiffs against OHMRS itself, and certainly was not obligated to first obtain ESE's permission before settling the Shoemaker plaintiff's claims against ESE that would result in an indemnity claim by ESE over against OHMRS.

Third, OHMRS had no legal duty to settle independent claims brought against ESE by the Shoemaker plaintiffs, that is, claims based on something other than OHMRS' negligence, and for which OHMRS did not agree to indemnify ESE. (Plaintiff does not suggest that when it entered into its own settlement agreement with the Shoemaker plaintiffs, it incurred damages subject to the indemnity agreement — that is, plaintiff is not suing for indemnification from OHMRS in this case.) Fourth, ESE was hardly "forced" to settle claims brought by the Shoemaker plaintiffs against ESE by OHMRS' settlement of claims brought by the Shoemaker plaintiffs against it (including claims for which it might owe indemnification). Fifth, the implied covenant of good faith and fair dealing only required OHMRS to deal fairly in the context of its agreement with ESE, which it did by resolving all

8

of ESE's potential liability arising from OHMRS' employees' actions.  See Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143-44 (1989).  Nothing more was required.  ESE does not allege the existence of some additional agreement under which OHMRS agreed to assist ESE in presenting its own defense to the Shoemaker plaintiffs' independent claims against ESE, or some other agreement to settle only if all defendants first agreed.  And, critically, no such obligation arises from the indemnity agreement in the subcontract between ESE and OHMRS.

ESE complains that "it had every right to expect that OHMRS would not leave it without the ability to present crucial evidence at trial through OHMRS employees just weeks before trial of this major case was to commence.  That is precisely what OHMRS did by entering a settlement agreement with the Shoemaker plaintiffs, which it was under no legal compulsion to enter, and by allowing the Shoemaker plaintiffs to assume indemnity obligations to it which left OHMRS with no incentive to assist ESE in the presentation of what ESE believed were cogent, legitimate, and persuasive defenses to the Shoemaker claims." Objection to OHMRS Motion to Dismiss, at 7-8.

9

ESE's argument also seems to be that OHMRS owed ESE both a legal duty to refrain from settling the claims against it (OHMRS) in the absence of "legal compulsion" to do so, and to assist in ESE's presentation of a defense to claims having nothing to do with OHMRS (all claims based on OHMRS' negligence, or that of its employees, were settled, so ESE faced no liability in that regard). No such legal duties exist. ESE may have expected OHMRS to be helpful, but OHMRS had no legal obligation to be helpful, and ESE points to no contractual or legal predicate for asserting such a duty. ESE does not suggest that OHMRS owed a contractual duty to assist in ESE's defense of independent claims against it; there is no such common law duty; and, OHMRS had already completely fulfilled its contractual duty of indemnification by fully settling all claims brought by the Shoemaker plaintiffs that could have led to an indemnification claim by ESE against OHMRS. Of course, in its own case ESE was fully able to conduct discovery, take depositions, call witnesses (or employ deposition testimony), present evidence, and otherwise defend its case, without the necessity of OHMRS' helpful

10

cooperation – OHMRS and its employees were certainly subject to available court processes.

Plaintiff's pleadings are fairly difficult to decipher, and they offer not very much by way of legal support for the viability of what appear to be the claims advanced. The court has considered the issues raised as best it can under the circumstances, but "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Assuming ESE's pleadings assert a general right to recover from OHMRS due to an alleged breach of the contractual covenant of good faith and fair dealing implied by the common law of New Hampshire, the complaint fails.

Under New Hampshire law, the implied covenant of good faith and fair dealing "is an example of a common law application of public policy to contract law." Harper v. Healthsource of New Hampshire, Inc., 140 N.H. 770, 775 (1996). In contracts such as the one at issue here, the scope of the covenant does not extend to prohibit all conduct perceived to be "unfair" by a contracting

11

party, but rather is limited to precluding one party from unfairly performing its obligation in a manner that effectively deprives the other of a substantial part of the value of the contract. As explained in <u>Centronics v. Genicom Corp.</u>, 132 N.H. 133 (1989):

> [U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

<u>Id.</u> at 140.

So, it is a basic mistake (albeit a prevalent one) to assume that the "implied covenant of good faith and fair dealing" somehow imposes collateral and extra-contractual obligations to generally act in a "fair" manner; it merely requires that the contractual obligations actually assumed by the parties be performed fairly and in good faith, to accomplish the purpose of the contract. In this case, ESE does not seem to claim that OHMRS possessed some degree of contractual discretion that it exercised unfairly to deprive ESE of a substantial portion of the

12

indemnification agreement's value. Indeed, taking the facts as ESE pleads them, it would appear that OHMRS completely and fully performed its contractual indemnification obligations by obtaining a comprehensive release from the Shoemaker plaintiffs, a release that resolved all possible claims against ESE arising from OHMRS' negligence or that of its employees and agents. So, this is a case in which OHMRS fully performed its obligations under the indemnification contract and ESE obtained all to which it was entitled: a complete release from any liability it might have incurred as a result of the negligence of OHMRS, its agents, or employees. Necessarily, therefore, this is not a case in which one party could (in good faith) claim that the other exercised broad contractual discretion in a manner that deprived it of the substantial value of the bargain. It is difficult to imagine a breach of the covenant of good faith and fair dealing by a party obligated to provide indemnification who in fact fully performs that obligation by obtaining a full and complete release of all claims subject to the indemnification obligation. Certainly, if such a breach is theoretically possible, it has not been described in the complaint against OHMRS.

13

To the extent, ESE seems to be arguing that OHMRS owed it a legal duty not to settle either the claims brought by the Shoemaker plaintiffs against OHMRS itself, or the claims brought against ESE for which ESE could claim indemnity against OHMRS, it is mistaken.  OHMRS owed ESE no such duty, either at common law, or under the good faith and fair dealing obligation implied in the indemnification agreement between ESE and OHMRS.  And, OHMRS owed ESE no legal duty to assist ESE in defending claims brought against ESE by the Shoemaker plaintiffs that were independent of the claims for which OHMRS owed ESE an obligation of indemnification (which obligation it fully satisfied when it settled all such claims and obtained a comprehensive release that inured to ESE's full benefit).

## CONCLUSION

Defendant OHMRS' motion to dismiss for failure to state a claim (document no. 43) is GRANTED.

14

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 27, 2000

cc:   James C. Wheat, Esq.
      Gordon A. Rehnborg, Jr., Esq.
      Margaret H. Nelson, Esq.