Hazard-Chaney v. Optima Healthcare    CV-00-355-B    12/18/01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Lorraine Hazard-Chaney, M.D.**

    **v.**                                Civil No. 00-355-B
                                    Opinion No. 2001 NH 227
**Optima Healthcare,**
**Optima Health, Inc.,**
**Catholic Medical Center**
**Physician Practice Associates,**
**and Dr. Keith A. Lammers,**
**Vice President/Medical Director**



<u>**MEMORANDUM AND ORDER**</u>


Lorraine Hazard-Chaney, M.D., brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2001 <u>et seq.</u>, and supplemental state law theories of wrongful termination, defamation, and intentional infliction of emotional distress.  By order dated November 17, 2000, I dismissed Hazard-Chaney's wrongful termination claim as to all defendants, her Title VII claim as to Dr. Keith Lammers, and her intentional infliction of emotional distress claim as to all defendants except Lammers.  Defendants now seek summary judgment on the

balance of Hazard-Chaney's claims.  For the reasons that follow, I grant defendants' motion on the remaining Title VII claims and decline to exercise supplemental jurisdiction over the residual state law claims.

I.

On April 15, 1996, Hazard-Chaney, a physician specializing in family practice, entered into a three-year physician employment agreement with defendant Catholic Medical Center Physician Practice Associates ("CMC PPA"), a primary care physician group affiliated with defendants Optima Healthcare and Optima Health, Inc. (collectively, "Optima").  Lammers was an Optima medical director and plaintiff's medical supervisor during the 1996-1999 contract period.

By letter dated March 9, 1999,[1] Lammers informed Hazard-Chaney that he was "unable to renew [her] employment contract" and that, "[w]ith the current undefined future of CMC PPA, [he was] unable to further employ [her] with this organization."

---

[1] The letter actually is dated March 9, 1998, but it is apparent from context that "1998" is a typographical error and that "1999" was intended.

Lammers changed his position the next day.  In a March 10, 1999 letter he stated:

> After our discussion on March 9, it became apparent to me that even with the undefined future of CMC PPA, I would like to offer you a one year extension of your contract.
>
> Hence, I propose a one year probationary contract commencing on June 10, 1999, with a 6 month review. During this period it is expected that you will demonstrate markedly improved performance in the areas of patient satisfaction survey results, on-call coverage for other physicians, maintaining adherence to your office schedule, not coming to work late or seeing patients behind schedule, demonstrating adequate follow-up with patients regarding lab or x-ray results, continued growth of the practice, increased volume of patients seen on a daily basis, and overall exhibiting better quality in your patient care.  A lack of significant improvement in the [sic] areas will result in the non-renewal of your contract.
>
> If this is agreeable, this one year extension will be from June 10, 1999 through June 10, 2000, with a 60 day notice from either party for non-renewal.

Hazard-Chaney did not sign the proposed probationary contract and, on June 10, 1999, her employment with CMC PPA came to an end.

Hazard-Chaney, who is African-American, subsequently filed a timely discrimination complaint with the United States Equal Employment Opportunity Commission, received a right-to-sue letter, and eventually brought this action against defendants

under Title VII, as well as the supplemental state law theories noted in the first paragraph of this memorandum and order.

## II.

Hazard-Chaney relies on the familiar McDonnell Douglas burden-shifting paradigm in attempting to prove her Title VII claims. See, e.g., Conward v. Cambridge Sch. Committee, 171 F.3d 12, 19 (1st Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)). Defendants in turn deny that they discriminated against Hazard-Chaney and instead assert, at least implicitly, see infra note 6, that they did not offer her a longer contract because she saw too few patients during the initial contract period and failed to provide the patients she saw with quality medical care. They contend that they are entitled to summary judgment because Hazard-Chaney cannot prove that defendants' apparently benign explanation is a mere pretext for unlawful discrimination.[2]

---

[2] Defendants make a threshold argument that Hazard-Chaney has not made out a prima facie case of discrimination because she has not made a prima facie showing that her job performance was satisfactory or that she suffered an adverse employment action. See, e.g., Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996) (detailing the prima facie showing a plaintiff must

-4-

Defendants have produced documents supportive of their contention that they declined to offer Hazard-Chaney a longer contract because her job performance was unsatisfactory rather than because of her race. The documents suggest that Hazard-Chaney failed to satisfy contractually agreed-upon patient contract goals;[3] that her performance in patient satisfaction surveys had declined over the term of the initial contract to a point where, during the final period for which there are survey results (August 1, 1998-October 31, 1998), Hazard-Chaney finished

_____

make in challenging an adverse employment action under Title VII). I shall assume arguendo that Hazard-Chaney has made a prima facie showing of discrimination and proceed to assess whether she has adduced sufficient evidence to prove that defendants' articulated reasons for the actions taken mask a racially discriminatory animus. See Conward, 171 F.3d at 20.

[3] See Appendix to Defendants' Motion for Summary Judgment, Exhibit 8 (Lammers' May 26, 1998 meeting notes observing that defendants had forgiven Hazard-Chaney's failure to meet contractually specified patient contact numbers during the first year of her employment contract but would not do so again because she had not done everything possible to build her practice); Exhibit 12 (Lammers' September 29, 1997 meeting notes explaining why he concluded that Hazard-Chaney was not at fault for failing to meet contractually specified patient contact numbers during the first year of her contract); Exhibit 14 (Lammers' July 8, 1998 letter noting that Hazard-Chaney was 15% below her patient contact minimum for the year and suggesting that some, but not all, of the problem was due to office turmoil beyond Hazard-Chaney's control).

last out of 31 doctors in nine of the ten critical care categories surveyed;[4] and that Hazard-Chaney's punctuality, on-call performance, willingness to follow up with patients, and overall patient care had been regarded as problematic.[5]  Hazard-

_____

[4]  See Appendix to Defendants' Motion for Summary Judgment, Exhibit 10 (results of surveys conducted by Press Ganey Associates, Inc., an independent entity which conducts patient satisfaction surveys for healthcare providers).  In the one surveyed critical care area in which she did not finish last ("medical skill/knowledge of doctor"), Hazard-Chaney finished next to last.  See id.

[5]  See Appendix to Defendants' Motion for Summary Judgment, Exhibit 8 (Dr. Lammers' May 26, 1998 meeting notes expressing concern about Dr. Hazard-Chaney's punctuality, schedule management, and patient follow-up); Exhibit 9 (March 25, 1999 patient letter to Dr. Hazard-Chaney complaining about her being significantly behind schedule); Exhibit 11 (undated survey questionnaire complaining about, inter alia, how long it took Dr. Hazard-Chaney to care for an infant who had fallen from her crib); see also Appendix to Response of Defendants to Plaintiff's Objection to Defendants' Motion for Summary Judgment, Exhibit 23 (Practice Manager Darlene Pickman's October 16, 1998 memorandum detailing complaints from the practice answering service regarding Dr. Hazard-Chaney's on-call performance and attitude); Exhibit 24 (Dr. Lammers' March 26, 1999 file note detailing that a fellow physician was concerned about Dr. Hazard-Chaney's "clinical care thought process"); Exhibit 25 (March 21, 1999 occurrence report detailing a patient's dissatisfaction with the care provided her by Dr. Hazard-Chaney); Exhibit 26 (undated survey questionnaire complaining about the timeliness and quality of the care provided by Dr. Hazard-Chaney).

Chaney does not challenge the authenticity of this evidence.[6]

Nor does she contend that defendants are barred from basing employment decisions on such evidence.

Instead, Hazard-Chaney seeks to explain her less-than-satisfactory job performance by arguing that defendants

_____

[6] Hazard-Chaney passingly notes in her objection to defendants' motion that two of the exhibits defendants have submitted in support of their motion, Exhibits 5 and 6, are not dated, witnessed, or sworn to. Cf. Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) ("Documents supporting or opposing summary judgment must be properly authenticated.") (citing Fed. R. Civ. P. 56(e)). In fact, the great majority of the documents defendants have submitted have not been properly authenticated. I therefore do not regard the facts that these documents suggest as "established" for purposes of ruling on defendants' motion. Nor will I give any consideration to the two exhibits to which Hazard-Chaney has arguably objected. But because Hazard-Chaney does not seek to strike the remaining documents or object to their inclusion in the summary judgment record, cf. Perez v. Volvo Car Corp., 247 F.3d 303, 313-15 (1st Cir. 2001) (holding that a Rule 56(e) objection to material submitted in support of a summary judgment motion is preserved if the opposing party advises the trial court that she considers the material defective and spells out the nature of the defects clearly and distinctly), I shall rely upon them for the limited purpose of fleshing out defendants' reasons for offering her a probationary contract renewal, which are only implicitly set forth in the March 10, 1999 letter, the authenticity of which Dr. Hazard-Chaney effectively admitted to when she attached it to her complaint, see Fed. R. Civ. P. 10(c) (exhibits to pleadings are parts thereof for all purposes); cf. Carmona, 215 F.3d at 132 (observing that a party moving for summary judgment "may point to evidentiary materials already on file . . . that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial").

deliberately created a working environment in which she could not satisfy their objective performance criteria. In other words, Hazard-Chaney claims that defendants set her up to fail because she is African-American. In support of this argument, Hazard-Chaney adduces testimonial evidence that defendants provided her with a dismal and poorly maintained office, as well as an excessive concentration of poor, non-English-speaking, and non-paying clients, who take longer to see and depress office revenues.[7] Hazard-Chaney also adduces testimonial evidence that, despite repeated requests, defendants failed to provide her with adequate staff and marketing support; adequate security; adequate telephone service and coverage; and necessary medical equipment, such as a full-sized refrigerator, a hearing tester, a spirometer,[8] and a colposcope.[9]

---

[7] Hazard-Chaney testified that other CMC PPA physicians were permitted to close their practices to such patients and/or to refer such patients to her, but that she was not permitted to turn such patients away because her patient contact numbers were too low.

[8] A spirometer is "[a] gasometer used for measuring respiratory gases." Stedman's Medical Dictionary, at 1452 (25th ed. 1990).

[9] A colposcope is "[a]n endoscopic instrument that magnifies the cells of the vagina and cervix in vitro to allow

Hazard-Chaney also supports her claim with two affidavits from patients who extol her virtues as a physician, as well as an affidavit from a former co-worker alleging that (1) defendants forbade the co-worker from speaking in Spanish to Spanish-speaking patients, (2) defendants did not supply Hazard-Chaney with a hearing tester or spirometer, which "every doctor's office has," and (3) that defendants discriminated against Hazard-Chaney and undercounted the number of patients seen by her.[10] Finally, Hazard-Chaney relates that, shortly after she was hired, Lammers told her that he was not impressed with the quality of the physicians Optima's recruiter had enlisted and rudely refused to acknowledge her or her children at a reception for new physicians.[11]

---

direct observation and study of these tissues." Id. at 331.

[10] The affidavit does not elaborate upon the nature of the perceived discrimination and undercounting. These allegations therefore do not constitute probative evidence of discrimination or undercounting. See, e.g., Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999) ("unsupported speculation" should not be credited in evaluating whether a party opposing summary judgment is entitled to a trial).

[11] Hazard-Chaney also claims that Optima's physician recruiter also warned her to "watch her back" because Lammers frequently mentioned in a disapproving manner that she was African-American. As defendants note, this statement is

In certain instances, a claimant may establish that her employer's objective and facially legitimate reasons for taking adverse employment actions are a mere pretext for unlawful racial discrimination by demonstrating that her employer deliberately created a working environment in which she could not satisfy the criteria by which she was to be judged. See, e.g., Watson v. Norton, 2001 WL 290081, at *9 (10th Cir. 2001) (unpublished opinion). To survive a motion for summary judgment in such a case, however, the plaintiff must respond with evidence sufficient to permit a reasonable person to conclude that she was deliberately set up to fail because of her race. See id. at 11. Hazard-Chaney has failed to meet this challenge.

First, Hazard-Chaney has offered little more than conclusory assertions that her working conditions were substantially less hospitable than those defendants provided to other similarly situated physicians.[12] Second, while the evidence of lack of

_____

inadmissable hearsay. I therefore cannot consider it as tending to prove the truth of the matter asserted. See, e.g., Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

[12] As the First Circuit has recognized, evidence that a Title VII defendant has treated the plaintiff differently than others in the terms and conditions of her employment can be probative of discrimination made unlawful by the statute. See

-10-

support from defendants (in terms of staff, marketing, equipment, and facility investment) might be taken to explain why Hazard-Chaney fared poorly on certain aspects of the patient surveys – e.g., "waiting time to see doctor," "doctor's concern re conv./comfort" – Hazard-Chaney has not adequately explained how this lack of support caused her to score so poorly in such crucial patient care areas as "doctor's respect for your questions," "medical skill/knowledge of doctor," and "confidence

_____

Conward, 171 F.3d at 20.  But the probative value of such evidence depends upon a concomitant showing that the plaintiff and those to whom she is comparing herself are so similarly situated with respect to the relevant facts and circumstances that "apples [are being] compared with apples."  Id. (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)).

Here, Hazard-Chaney's evidence is merely that she was treated differently than other physicians within defendants' network with respect to being permitted to close her practice to poor clients and with respect to the equipment, marketing, maintenance, and staff support she received from defendants.  She has not attempted to establish that the physicians and practices to which she is comparing herself and her solo practice are sufficiently similar to her and her practice to warrant an inference of unlawful discrimination.  Nor has she produced evidence or argument responsive to defendants' explanation for the differential treatment:  to the extent that there was differential treatment, it was a result of the fact that Hazard-Chaney had a solo practitioner practice with different patient contact statistics and staffing, support, and equipment needs than the multi-physician or specialty practices to which the comparisons are drawn.

-11-

in doctor." Her "lack of support" evidence is therefore insufficient to create a trialworthy issue as to whether defendants' proffered justification constitutes animus-masking pretext. Finally, Hazard-Chaney has conspicuously failed to produce any direct evidence to support her claim that she was given unfavorable assignments and otherwise set up to fail because of her race.[13] In light of these deficiencies, no reasonable juror could conclude from the present record that defendants set her up to fail their objective performance measures because she was African-American. Accordingly, defendants are entitled to summary judgment with respect to Hazard-Chaney's Title VII claim.

### III.

For the reasons described in this Memorandum and Order, I grant defendants' motion for summary judgment [document no. 15] on the Title VII claims. There being no independent basis for

---

[13] The affidavits and anecdotal evidence of rudeness on the part of Lammers do nothing to undermine the non-discriminatory reason defendants have given for the challenged action: that, in their view, Hazard-Chaney's job performance from 1996-1999 limited any probable renewal of her employment contract along the lines specified in the March 10, 1999 letter.

-12-

subject matter jurisdiction over Hazard-Chaney's remaining state law claims and no compelling basis for me to keep them in federal court, I decline to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c)(3).

The Clerk is directed to close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 18, 2001

cc:  Ruth A. Hall, Esq.
     Arpiar G. Saunders, Esq.
     Elaine M. Michaud, Esq.